## In re HANSEN'S ESTATE.

No. 3319.  Decided July 31, 1919.  (184 Pac. 197.)

1. EXECUTORS AND ADMINISTRATORS—EVIDENCE INSUFFICIENT TO SHOW DECEASED WIFE OWNED STOCK AND SECURITIES. Evidence *held* insufficient to show that a deceased wife was the owner of canal stock, or a note and mortgage, transferred by her husband, her administrator, by indorsement in his handwriting. (Page 34.)

2. HOMESTEAD—RIGHT OF SURVIVING SPOUSE TO OCCUPY NOT LOST BY REMARRIAGE. On death of the husband or wife, the surviving spouse, under Comp. Laws 1917, section 7643, is vested with the right of occupancy and use of the homestead, which continues until otherwise directed by the court, and is not lost merely by remarriage. (Page 36.)

3. ATTORNEY AND CLIENT—COUNSEL'S ADMISSION OF CONCLUSION OF LAW NOT BINDING ON CLIENT OR COURT. Counsel's admission of a legal conclusion is binding neither on his client nor on the court; it being the court's duty to declare the law as it exists, regardless of concessions. (Page 37.)

4. EXECUTORS AD ADMINISTRATORS—PAYMENT OF CLAIMS WITHOUT PRESENTATION NECESSITIES PROOF THAT THEY WERE JUST. An administrator is entitled to credit for debts paid by him in good faith, on making satisfactory proof that they were justly due and that the amount paid was the true amount of the debt over all payments or set-offs, and that the estate is solvent, though no claim for such indebtedness was presented and allowed as provided by the Probate Code. (Page 38.)

5. EXECUTORS AND ADMINISTRATORS—PAYMENT OF CLAIMS WITHOUT ALLOWANCE PLACES BURDEN OF PROOF ON ADMINISTRATOR. In paying claims without requiring their presentation and allowance, the administrator acts at his peril, and assumes the burden to prove all the facts required by Comp. Laws 1917, section 7750, to be proven to the satisfaction of the court. (Page 38.)

6. EXECUTORS AND ADMINISTRATORS—PAYMENT OF TAXES GIVES

RIGHT TO CREDIT. A widower, administrator of his deceased wife's estate, interested in' preserving it for himself and their children, acted within his rights in paying taxes out of his own funds, and is entitled to credit therefor, with interest, on his final accounting, whether paid before or after his appointment. (Page 39.)

7. EXECUTORS AND ADMINISTRATORS—IMPROVEMENTS ON REALTY SHOULD BE AUTHORIZED BY COURT. An executor or administrator should apply to the court for authority to make improvements on realty of decedent, and if he chooses to make them without first obtaining authority he assumes the burden clearly to prove the improvements were necessary and made in good faith. (Page 41.)

8. EXECUTORS AND ADMINISTRATORS—WHAT REPAIRS AND IMPROVEMENTS GIVE RIGHT TO CREDIT. Under Comp. Laws 1917, sections 7718, 7739, a widower, administrator of his deceased wife's estate, held entitled to allowance on final accounting of any expenditures necessarily made in repairing houses, buildings, or fences existing at the death of his wife, though whether he should be allowed credit for new additions to the house, the erection of a barn, etc., was for the district court to determine, in view of the condition of the premises, etc. (Page 41.)

9. EXECUTORS AND ADMINISTRATORS—WINDMILL NOT IMPROVEMENT ENTITLING ADMINISTRATOR TO CREDIT. A widower, administrator of his deceased wife's estate, on his final accounting as such, held not· entitled to credit for the cost of erection of a windmill, an improvement of a temporary character, necessitated mainly for his own convenience while occupying the premises. (Page 43.)

10. HUSBAND AND WIFE—LOAN TO HUSBAND SECURED BY NOTE SIGNED BY WIFE AS SURETY, NOT A CHARGE ON HER ESTATE. Where a husband borrowed money for his own use, and his wife signed the notes merely as surety, the husband, after his wife's death, when he was her administrator, in paying the notes merely paid his own debt, and cannot charge any portion thereof to the estate. (Page 43.)

Appeal from District Court, Salt Lake County, Third District; *H. M. Stephens*, Judge.

In the matter of the estate of Maren C. Hansen, deceased. Petition by Martha H. Reese, decedent's daughter, against Henry Hansen, her father, the administrator, to compel an

accounting, and for his removal and the appointment of a successor. From a judgment for petitioner, the administrator appeals.

REVERSED, and cause remanded with directions.

*H. Ray Van Cott* of Salt Lake City, for appellant.

*A. V. Watkins* of Salt Lake City, for respondent.

AGEE, District Judge.

The deceased died intestate November 4, 1895, in Salt Lake county, possessed of forty-three acres of land in that county. No proceedings were had for the administration of her estate until March 14, 1902, when the appellant, Henry Hansen, was appointed administrator of said estate and qualified as such. On March 24, 1902, an inventory and appraisement of the estate was filed, which showed that the estate consisted of two tracts of land, one of twenty acres, appraised at $660, and the other of twenty-three acres, appraised at $940. These tracts were separated merely by a public road, and constituted the home of the appellant and his family. Nothing further was done until the 26th day of October, 1915, when an order was entered directing that notice to creditors should be published, which was accordingly done, and on December 28, 1915, a decree finding that due notice had been given to creditors was entered, but no claims against the estate were presented.

The deceased left, surviving her, her husband, the appellant herein, and five minor children, of whom Martha H. Reese was the eldest. The appellant and his family had lived on this land for several years prior to the death of his wife, and after her death he and their five minor children continued to reside there until the children reached their majority, respectively, or married and left the parental domicile. About a year after the death of Maren C. Hansen, appellant remarried, and he and his present wife and their children

have continued to occupy the said premises as their home. On January 11, 1917, the respondent, Martha H. Reese, filed in the district court of Salt Lake county a petition, alleging that she was a daughter and heir of said deceased, the appointment of the appellant as administrator of the estate of her deceased mother, Maren C. Hansen, and that her mother left an estate consisting of two tracts of land hereinbefore mentioned, of the value of $660 and $940, respectively, and also of certain shares of capital stock in an irrigation company, which shares of stock she alleges were held in trust by the appellant as trustee for his former wife, for the purpose of irrigating the lands described.

After setting out the names of the heirs of the deceased, respondent further alleges that appellant, as administrator of the estate of her deceased mother, had failed and neglected, for a period of more than fourteen years after his appointment and qualification as such, to publish notice to creditors; that he had occupied said real estate for more than fourteen years after his appointment as administrator and had enjoyed the property as his own, and had also used the irrigation stock as his own, and had neglected to account to said estate for the rents and profits thereof for that period of time; that he had failed to take the necessary steps to have the estate closed and distributed, and had allowed the real estate to be sold for taxes for the year 1900, and had procured a quitclaim deed therefor in 1914 from Salt Lake county, conveying said real estate to him personally, and not as administrator. She further alleges that appellant pretended to have large claims against the estate, which were not legal and just, and that he claims to be the owner of the stock in the irrigation company, and denies that he held the same in trust, and that it would be necessary to bring suit to recover said stock and the said water rights and the rents and profits of said real estate for the time that he had occupied the same. She prayed that appellant, as such administrator, be required to render an accounting and for the revocation of his letters of administration, and the appointment of another as administrator, and for general relief.

To this petition the appellant filed an answer in which he admits the allegations of the petition as to the death of the deceased, his appointment as administrator; that the deceased left an estate, consisting of the real estate described in the petition; that it was of the value therein stated; and that he did not publish notice to creditors until more than fourteen years after his appointment, and had not rendered any account or taken any steps to close the estate. He denies, however, that the deceased was the owner of any water stock or water right, or any personal property, at the time of her death, and alleges in substance that the reason that he did not render an account as such administrator, or publish notice to creditors, was that in March, 1894, he was sick and was not expected to live any great length of time, and that at that time he was the owner of all of the said real estate, and that the improvements thereon were of little value, and that in order to protect his wife, and to provide for her and their children, all of them minors, in case of his death, he conveyed the real estate to his wife without other consideration; that thereafter he regained his health, and that his wife died November 4, 1895; that his wife intended, and repeatedly promised to reconvey the real estate to him, but that for about two months before her death she was physically unable to make the necessary conveyance. He further alleges that after the death of his wife he purchased the interest of all of his children in said property, and that all of them except the respondent, Martha H. Reese, conveyed their interest to him, and that the said Martha H. Reese had received the consideration agreed upon, and had agreed to convey her interest in said real estate to him, but afterwards refused to do so. He admits that he occupied the premises for more than fourteen years after his appointment as administrator, but alleges that the rental value of said real estate in the condition it was in at the time of the death of Maren C. Hansen, and at all times since that date, exclusive of the improvements placed thereon by him, and without water right, did not exceed fifty dollars per year, and further alleges that ever since the death of his wife he had paid the taxes on said real estate, and that he

had at all times resided on said lands with his minor children. He admits that he made claims against the estate, but denies that said claims are illegal or unjust.

With his answer appellant filed an account as follows:

"Account and Report.

Debtor.

To amount of inventory and appraisement of property
of said estate, on file herein............................$1,600 00

Rental value of real estate, without water right, in the
condition that the property was in at the time of the
death of Maren C. Hansen, deceased, commencing in
the year 1902 and ending with the year 1916, at $50
per annum .........................................   700 00

Total.....................................$2,300 00

Contra.

To clerk's fees:

Filing petition................................$2 00

Filing inventory ...........................$10 00 $   12 00

To advertising notice to creditors........................    4 00

To advertising notice of hearing on petition..............    5 00

To medical services, hired help, and nurse charges for
deceased .........................................  520 00

To payment of two promissory notes:   One to Charles
Nielson, of Big Cottonwood, Salt Lake county, Utah,
for $500, and the other to Joseph P. Newman of Big
Cottonwood, Salt Lake county, Utah, for $500, owed
jointly by Maren C. Hansen and Henry Hansen at
the time of the death of Maren C. Hansen, one-half of
which is chargeable against the estate of Maren C.
Hansen ..........................................  500 00

Attorney's fees, paid to Smith & McBroom...............   50 00

Attorney's fees paid to Wilson & Smith..................   25 00

To taxes on real estate for the years 1902 to 1916, both
inclusive ........................................  578 45

To C. A. Carlquist, funeral expenses, November 4, 1895....   78 00

To Utah Nursery Company, for trees planted on said
property .........................................    9 00

To Victor Anderson, for driving well on said real estate,
October, 1897 ....................................  250 00

Paid Consolidated Wagon & Machine Company for wind-
mill .............................................   62 50

To A. N. Anderson for furnishing material and driving
flowing well .....................................  358 00

Appeal from Third District.

To improvements made on real estate by Henry Hansen,
    since the date of the death of said deceased, which
    were and are of the value of..................... 1,425  00
    (The last-mentioned improvements consist of the con-
    struction of four rooms, rebuilding of a summer
    kitchen, and the construction of a barn and a granary.)
To building a fence on said real estate by Henry ,Hansen    206  00
    (Henry Hansen has constructed a flowing well to which
    is attached a windmill, but such flowing well and wind-
    mill are before accounted for in this report.)........

Total..........................................$4,077.95

The respondent, in a reply filed, alleges, inter alia, that the
real estate in question was purchased with money belonging
to her deceased mother, and that the appellant took title
thereto in his own name, and that because of difficulties in
which appellant became involved he conveyed the property to
his wife. With her reply the respondent filed exceptions to
the account rendered by appellant, in which she objected gen-
erally to all of the items therein, on the ground that none of
them were presented within the time limited by the notice to
creditors, and were not properly chargeable against the es-
tate. She particularly objected to the items of $500 paid to
Newman and Nielsen; the items for medical services, hired
help, and nurse, and all of the items of expenditures for im-
provements on the land, on the ground that they were not
properly chargeable against the estate and are exorbitant.
She also excepts to the items for attorney's fees, on the
ground that the attorneys had been negligent in looking after
the legal business of the estate, to the damage and detriment
of the estate, and that the services were of no value to the
estate. She also excepts to the item for medical services,
hired help, and nurse on the ground that the charges were
exorbitant, unsupported by vouchers, and indefinite as to
time, amount, and class of service, and by whom rendered.
She also excepts to the amount with which appellant charged
himself as rent for the real estate and alleges that the rental
value was at least $500 per annum.

We have stated the issues joined thus fully in order that
a full understanding of the questions involved may be had.

By agreement the issues joined by the petition, the answer, and reply, and the account rendered by the administrator, appellant herein, and the exceptions thereto by the respondent were tried together. The hearing was commenced on December 3, 1917, and on the next day a postponement was ordered by agreement, and the trial was resumed March 28, 1918. In the meantime Messrs. *Smith & McBroom*, who had previously represented him, had withdrawn as counsel for appellant, and *Ray Van Cott, Esq.*, and *Hon. A. J. Weber*, now a member of this court, appeared for the appellant during the remainder of the trial. At the conclusion of the trial the court refused to allow any of the items of appellant's account, except two dollars for filing of petition for letters of administration, ten dollars for filing inventory, four dollars for publication of notice to creditors, and five dollars for publishing notice of hearing on petition, a total of twenty-one dollars, and found that at the time of her death the deceased, Maren C. Hansen, was the owner of the real estate hereinbefore mentioned, and also twenty-four shares of the capital stock of the Utah & Salt Lake Canal Company, and a note for $900, made by one Bostolo Brosghein, payable originally to the appellant, Henry C. Hansen, and secured by a mortgage on certain real estate, and assigned to the deceased, and that such shares of stock and said note and mortgage should have been included in the inventory filed by appellant as administrator. The trial court also found that appellant was chargeable with rental value of the real estate from January, 1896, a little less than two months after the death of Maren C. Hansen, to the date of the judgment, together with legal interest thereon, amounting in the aggregate to $17,396.84. The court further found that there was due from the administrator, because of said note and mortgage, $2,892.25, and that the appellant had received for a right of way for a railroad line over the real estate the sum of $174, which, with interest, amounted to $234.35, making a total debit against appellant of $20,523.44.

Judgment was entered in accordance with these findings, and removing appellant as administrator, appointing another

administrator, and directing such administrator to bring nec-
essary legal actions to recover from appellant and other neces-
sary parties the rents and profits owing by him to the estate,
and also to recover the twenty-four shares of capital stock in
said canal company.   From this judgment the administrator
has appealed to this court, and assigns many errors, but the
only errors which we deem it necessary to consider are those
challenging the correctness of the judgment of the trial court
in charging the appellant as administrator with rents for the
real estate from the date of the death of Maren C. Hansen to
the date of the accounting, and with the $900 note and in-
terest thereon, and with the twenty-four shares of canal
stock, and refusing to allow him any credits for the payment
of any debts of the deceased, expenses of her last illness,
funeral expenses, and attorney's fees, or for taxes paid, or
for improvements and repairs made on the real estate, and
removing him as administrator.

Much of the evidence in the record relates to the convey-
ances made by children of appellant after they arrived at
their majority, and the consideration therefor; but, since
the appellant concedes that at the time of the death of Maren
C. Hansen the title to the land in question was in her, we
think this has no bearing on the questions involved in this
proceeding, the object of which is to require an accounting
by the appellant as administrator, and to remove him and
secure the appointment of another in his place.

As the respondent contends, and the trial court held, that
the twenty-four shares of stock in the canal company and the
$900 note and mortgage belonged to the deceased at the time
of her death, and should have been included in the inventory,
which contention is stoutly contested by appellant, and he as-
signs as error this holding of the trial court, we deem it ad-
visable to first dispose of this question. While it is contended
by respondent that the land was paid for, at least in part, by
money belonging to deceased, it is not contended that appel-
lant was not the original owner of the canal stock and the
note and mortgage in question.

The record shows without controversy that on March 3,

1894, the land was conveyed by appellant to his wife, and there is no evidence in the record, and no attempt to prove, that any consideration whatever was paid by the deceased for this conveyance. The only evidence as to the purchase of the real estate was given by the appellant, who testified that the land was bought with the $1,000 borrowed from Newman and Nielson on notes signed by him and his deceased wife. He testified, however, that the deceased inherited certain moneys from her father, part of which she received before leaving Denmark, and part after arriving in this country, and that part of this money was spent on this land. At the time the conveyance of the land was executed, appellant assigned to his wife the mortgage in question and presumably transferred the note to her, although all the evidence in the record on this subject consists of the record of the assignment of the mortgage. On the same date four certificates of capital stock of the canal company, aggregating twenty-four shares, held by appellant, were surrendered, and a new certificate for twenty-four shares was issued to Maren C. Hansen. There was no attempt to prove that she paid any consideration whatever for the note and mortgage, or the canal stock. So far as the record discloses, this conveyance of the land and the assignment and transfer of the note and mortgage and canal stock covered practically all the property owned by appellant. The only explanation given for this conveyance of the real estate, the assignment of the mortgage, and the transfer of the capital stock is found in the testimony of appellant and this is very meager. He testified that at the time the deed to the land was executed he was very sick; in fact, so sick that on his recovery he did not remember having made the deed until reminded of the fact by the physician who treated him. He further testified that he had no recollection of having transferred the canal stock, or concerning the $900 note and mortgage, but that, if he did transfer the canal stock, it was re-transferred to him before his wife died. He also testified that after his recovery his wife fully intended to reconvey the land to him, and repeatedly promised to do so, but that for two months before her death she was unable to make the

necessary conveyance. On October 12, 1897, the certificate of stock issued to Maren C. Hansen was surrendered and a new certificate issued to appellant. The surrendered certificate bore the following indorsement: "Maren Kriestine Hansen, September 25, 1895." The contention of the respondent is that this indorsement was forged by appellant, and, while the appellant denies that he wrote the indorsement, there is evidence tending to show that the handwriting is his.

Conceding this to be true, does it justify a finding that the indorsement is a forgery? We think not. Keeping in mind that it is undisputed that appellant, prior to March 3, 1894, was the owner of the real estate, and of this canal stock, and of the note and mortgage in question, all of which were conveyed and transferred to his wife, Maren C. Hansen, at the same time when appellant was very sick, that it constituted practically all of the property of the appellant, and that all of their children, five in number, were small, we think the most reasonable inference to be drawn is that this conveyance, and this transfer from appellant to his wife were made in contemplation of impending dissolution, in order that in case of his death the widow would not only have the home, but all of the property, to enable her to keep her children together and to rear them, and that upon the recovery of the husband, and when the wife in turn fell sick, it was her desire that in case of her death the husband should have all the property for a like purpose, and that, although she never reconveyed the real estate, she delivered the certificate of canal stock that had been issued to her, and also the note and mortgage, to her husband, if, indeed, the same had ever been in her actual possession, and that she indorsed the certificate and note, or authorized her husband to indorse her name thereon. In other words we think the only reasonable inference to be drawn from all the facts and circumstances appearing in the record is that it was the desire of appellant and his wife, Maren C. Hansen, that upon the death of either the survivor should at once, without any probate proceedings, have all the property which they had accumulated through years of toil, to enable such survivor to support and maintain

their minor children, and, for the purpose of accomplishing this end, the certificate of stock and the note and mortgage were returned to appellant, but owing to the illness of deceased a deed to the real estate was not executed by her to her husband, the appellant.

We think the evidence is insufficient to fasten upon appellant the crimes of forgery and embezzlement. He only kept what was rightfully and equitably his own. So far as the note and mortgage are concerned, there is no allegation concerning them in the petition, and no issue is tendered by the pleadings, and the findings and judgment of the trial court as to the note and mortgage are without the issue. As before stated, the appellant testified that he had no recollection of having transferred the canal stock to his wife, and had no recollection of the note and mortgage. It is not strange, however, that appellant, who testified that he had been sick a great deal, having had pneumonia eight times and typhoid pneumonia once, could not remember the details of these transactions between himself and wife, which occurred more than twenty years ago.

Holding as we do, that the evidence is insufficient to show that the deceased, Maren C. Hansen, was the owner of the canal stock, or the note and mortgage in question, it is unnecessary for us to discuss the evidence as to the genuineness of the indorsement of the certificate or the release of the mortgage. We conclude that the trial court erred in charging the appellant in his account as administrator with the shares of capital stock and the note and mortgage in question.

Appellant contends that he was not chargeable with the rental value of the real estate, for the reason that it was the homestead of the family, and under Comp. Laws Utah 1917, section 7643, he and his family of minor children were entitled to occupy the same "until otherwise directed by the court," and that the court has never made any order in the matter. That section provides, in so far as applicable to this question, as follows:

"When a person dies leaving a surviving wife, husband, or

minor children, they shall be entitled to remain in possession of the homestead and to the use of the property exempt from execution until otherwise directed by the court. * * * "

Counsel for respondent contends that upon the remarriage of the appellant his right as the surviving husband of Maren C. Hansen to occupy the homestead ceased, and cites in support of that contention two cases from California, namely, *In re Estate of Boland,* 43 Cal. 640, and *In re Still's Estate,* 117 Cal. 509, 49 Pac. 463. We think these cases are readily distinguishable from the case at bar. Each of the California cases arose upon an application to set aside a homestead under a statute of that state concerning homesteads. There appears to have been two provisions in the California statutes concerning the right of a surviving widow to a homestead in the lands of her deceased husband, namely; (1) Where during the existence of the community a homestead had been created by a compliance with the homestead act; and (2) where after the death of the husband she applied to the proper court for an order setting apart a homestead to her out of the lands of the deceased. Under the first provision, where, during the life of the husband, a family homestead has been set part, the title vests in the wife or widow by right of survivorship; and in the second the right to a homestead is acquired by making application to the proper court and obtaining an order setting apart a homestead. In the *Boland Case* the court said:

"Conceding, for the purpose of this case, that the property in question could be set apart to the widow, under the provisions of the Probate Act, notwithstanding the will of John Boland, it is evident that the widow could acquire no homestead interest in the property until an order of the probate court, or judge, was made, setting it apart to her. It differs from the case of a homestead created during the existence of the community, by a compliance with the provisions of the homestead act, the title to which vests in the wife upon the death of the husband, by right of survivorship. In the latter case the property becomes the property of the widow by operation of law. In the case presented it could only become hers by the decree of the court or judge."

It will be observed that it is there held that the right to

have a homestead set apart after the death of the husband is determined by her status at the time the order is made, and that, since the order can be made only upon application of the widow, if she has remarried and is no longer a widow and head of the family, no homestead can be set apart to her.

Under Comp. Laws Utah 1917, section 7643, the right to remain in the possession of the homestead vests in the surviving spouse by operation of law upon the death of the husband or wife, without any order of any court, and this right continues "until otherwise directed by the court." It will thus be seen that under the provisions of the laws of California, under which the decisions referred to were made, it requires an affirmative act upon the part of the court or judge to entitle the widow to any homestead right in the property of her deceased husband, while under section 7643, supra, the homestead right attaches upon the death of the husband or wife, and it requires an affirmative act to terminate such right. In other words, in this state, upon the death of the husband or wife, the surviving spouse, by operation of law, is vested with the right of occupancy and use of the homestead, and this right continues, according to the express terms of the statute, "until otherwise directed by the court." No doubt the court would, upon application of any person interested in the estate, and upon a showing that justice required that this right to the occupancy and use of the homestead should be terminated, enter an order to that effect; but the remedy of a person interested in the estate is to apply to the court for an order directing the termination of such occupancy and use, and not in a proceeding to compel the surviving spouse to pay rental for the land.

It follows that, since no order has ever been made terminating the right of the appellant to occupy the lands in question, which constituted the homestead of the family at and prior to the death of Maren C. Hansen, he had a right under the law to occupy the same, and is not chargeable with the payment of rent therefor, and that the trial court erred in charging him with such rental value in the settlement of his account.

It is contended, however, by respondent, that the appellant never claimed the right to occupy the lands as surviving husband of Maren C. Hansen, and that during the trial his former counsel waived any such right by his admission that appellant was liable for the reasonable rental value of the lands; but we think this was but an admission of a legal conclusion and is binding neither upon appellant nor upon the court. It is the duty of the court to declare the law as it exists, regardless of what a party or his counsel may concede to be the law. 1 Sutherland, Code Pleading, 427; *Russell* v. *Wheeler*, 129 Mich. 41, 88 N. W. 73.

It is due to the learned trial judge who heard the case below to say that the many admissions of this character made by the former counsel of appellant were calculated to mislead the court in the hurry of the trial; but a careful reading of the record discloses the fact that after the change of counsel was made the present counsel for appellant objected to any evidence of the rental value of the premises on the express ground that the appellant and his minor children were entitled to occupy the premises ''until otherwise directed by the court.''

The trial court also refused to allow the appellant any credit in his account as administrator for funeral expenses, or the expenses of the last illness of the deceased, or for taxes paid on the real estate, or for permanent improvements placed thereon. The record does not disclose just why all of these claims were disallowed, but it was presumably on the theory that they must have been presented to the judge within the time fixed for the presentation of claims and must have been allowed by him. Comp. Laws Utah 1917, section 7666, reads as follows:

"The executor or administrator, as soon as he has sufficient funds in his hands, must pay the funeral expenses and expenses of the last sickness and the allowance made to the family of the decedent. He may retain in his hands the necessary expenses of administration, but he is not obliged to pay any other debt or any legacy until the payment has been ordered by the court."

Under this section claims for funeral expenses and expenses of the last sickness of the deceased person are not required

to be presented as other claims, but may be paid by the administrator without having been presented and allowed. Indeed, the statute requires him to pay such expenses as soon as he has sufficient funds in his hands. Of course, in his final settlement, the administrator should be required to prove to the satisfaction of the court the payment of such claims and that they are reasonable and just. Section 7750 provides that if upon the settlement of the account of an administrator—

"it appears that the debts against the deceased have been paid without the affidavit and allowance prescribed by statute, and it shall be proven by competent evidence to the satisfaction of the court that such debts were justly due, were paid in good faith, that the amount paid was the true amount of such indebtedness over and above all payments or set-off, and that the estate is solvent, it shall be the duty of the said court to allow the said sum so paid in the settlement of said accounts."

This section clearly confers upon the court ample authority to allow the administrator credit for any claims actually paid by him upon producing the proof required **4, 5** therein; and, indeed, it is the duty of the court to allow credit for claims so paid upon satisfactory proof of the required facts. The appellant is therefore entitled to credit for any debts against the deceased which were actually paid by him in good faith, upon making satisfactory proof to the court "that such debts were justly due and that the amount paid was the true amount of such indebtedness over and above all payments or set-off, and that the estate is solvent," notwithstanding no claim or claims for such indebtedness has been presented and allowed as provided by the Probate Code. In paying any claims, without requiring their presentation and allowance, the administrator acts at his peril; that is, he assumes the burden of proving all the facts required by the last-mentioned section to be proven to the satisfaction of the court. Such payments are not to be encouraged, and when made the proof should be clear and convincing to entitle him to credit in the settlement of his account; but when such proof is satisfactory to the court the law makes it the duty of the court to allow the sum so paid in settlement of the final account of the administrator.

Comp. Laws Utah 1917, section 7767, reads as follows:

"Before any decree of distribution of an estate is made, the court must be satisfied, by the oath of the executor or administrator, or otherwise, that all state, county, and municipal taxes legally levied upon personal property of the estate have been fully paid."

It is, we think, likewise the duty of the administrator to pay all taxes legally levied against the real estate. In this case it is undisputed that the appellant paid all the taxes levied against the lands belonging to the estate, and it is difficult to understand why he should not be credited with such payment in the settlement of his accounts. Indeed counsel for the respondent has not contended otherwise in his brief, and upon the oral argument only contended that no credit could be given for any payment made prior to his appointment as administrator, since such payment must have been made by him personally, and not as administrator. If the appellant had been a stranger to the estate, and not interested therein, there would be much force to this contention, as he would, under such circumstances, have been an intermeddler, voluntarily paying taxes of another. But the appellant was one of the heirs of Maren C. Hansen, and as such, and as the father of her minor children, was interested in preserving the estate by preventing it from being sold for taxes. He was, therefore, acting within his rights in paying the taxes out of his own funds, and is entitled to credit for all the taxes paid, together with interest thereon from the date of payment, whether paid before or after his appointment. The cause appears to have been tried upon the theory that the appellant occupied a position in no way different from a person who was a stranger to the estate, except in his capacity as administrator, and this probably led to the application of erroneous principles of law in determining this question and that of the payment of rentals.

As we have before stated, the court disallowed all of the claims of the appellant for improvements and repairs made on the premises. This presents a more difficult question than does the claim for taxes which we have been discussing. Comp. Laws Utah 1917, section 7718, provides, inter alia,

that an administrator "must keep in good tenantable repair all houses, buildings, and fixtures" on real estate under his control. Section 7739 provides that "he shall be allowed all necessary expenses in the care, management, and settlement of the estate." Under these provisions we have no doubt that the appellant is entitled to credit for expenses incurred in making repairs on the existing buildings, such as putting in new floors, putting on new roof, and other necessary repairs, or for the repair of existing fences; but the question is: Is he entitled to credit for any new buildings? Our statute on this subject is identical with the California statute on the same subject, and in the case of *In re Clos' Estate*, 110 Cal. 494, 42 Pac. 971, it was held that where an old building becomes untenantable, and it was impractical to repair it, a new building might be erected and its erection might be treated as repairs. We quote the first and third paragraphs of the syllabus in that case:

"1. An executrix of an estate, part of the buildings on which had been used for years as stables, on complaint as to their unsafe condition, consulted architects in regard to repairing the same, but was informed that, since the buildings were within the fire limits of the city, an ordinance required fireproof roofs and walls. It appeared that the premises were practically untenantable, because of the condition of the stables. *Held*, that the erection of new buildings at a reasonable cost on the site of the old for the same purposes, and in compliance with the ordinance, were 'repairs,' within Code Civ. Proc. section 1452, requiring executors to 'keep in good, tenantable repair all houses, buildings, and fixtures' on the estate, so that the executrix was entitled to credit for the expense thereof on her accounting."

"3. An executrix need not show, as a condition precedent to the allowance of a claim for the expense of repairs on the estate, that the repairs were ordered by the probate court, where the expense was reasonable, and for the benefit of the estate."

It is impossible to lay down any hard and fast rule to govern in matters of this kind. Much must necessarily be left to the judgment and sound discretion of the trial judge, but we approve of the statement of the Court of Appeals of New York in *In re Niles*, 113 N. Y. 547, 21 N. E. 687, in the following language:

"This matter of the administration of estates is one which is

peculiarly within the cognizance of equity, and a Surrogate's Court, in adjusting the accounts of executors and administrators, is governed by principles of equity as well as of law. *Upson* v. *Badeau*, 3 Bradf. Sur. [N. Y.] 15. Within the exercise of the statutory powers conferred upon him to direct and control the conduct and to settle the accounts of administrators and executors, the surrogate is not fettered; nor is he prevented by any rule of law from doing exact justice to the parties."

While section 7718, supra, does not in express terms require an executor or administrator to do more than to keep in good tenantable repair all houses, buildings, and fixtures of the estate, section 7739 provides that he shall be allowed all necessary expenses in the care, management, and settlement of the estate, and we think this provision is broad enough to include such permanent improvements on the land as are reasonably necessary for its occupancy and to preserve   **7, 8** the estate and enhance its value. *The better practice, however, and the one which the district courts should insist upon under ordinary circumstances, is for the executor or administrator to apply to the court in which the estate is being administered for authority to make such improvements. If an executor or administrator chooses to make such improvements without first obtaining authority to do so from the court, he acts at his peril, and assumes the burden of proving that the improvements were necessary, and were made in good faith and for the benefit of the estate, and the proof of these facts should be clear and convincing.* The question of the allowance for improvements must be determined from the facts in each particular case, bearing in mind that such improvements must be proven to have been reasonably necessary and made in good faith for the benefit of the estate. Take the matter of sinking a well. If there is no water on or in connection with the premises suitable for domestic purposes, in view of the indispensable necessity for pure wholesome water for such purposes, and the further fact that its acquisition will add permanently to the value of the estate, we think it rests in the sound discretion and good judgment of the court to allow the administrator the expenses necessarily incurred in that behalf; but all the facts and circumstances should be

taken into consideration and the matter determined upon the principles of justice and equity.

In this case we think appellant is clearly entitled to the allowance of any expenditures necessarily made in repairing houses, buildings, or fences existing on the premises at the time of the death of Maren C. Hansen, but that in view of the fact that the appellant, with his family, had the use and occupancy of the premises, it is a matter for the district court to determine, from all the facts and circumstances, whether or not appellant should be allowed credit for new additions to the house, and for the erection of a barn, the construction of new fences, and the sinking of wells, in the settlement of his account. In determining this question the court should take into consideration the evidence as to the condition of the premises, and their state of improvement and value at the time of the death of the decedent, and their condition, state of improvement, and value at the date of the settlement of the account of the administrator, and from all these facts determine what, if any, credits the administrator is entitled to in the settlement of his accounts for expenses incurred in the making of new improvements of the premises; it appearing without dispute that at the date of the death of Maren C. Hansen the land had but little improvements thereon, and that the buildings and fences were of small value, while a witness for the respondent testified that the farm, at the time of the trial, was in a high state of cultivation, and one of the best in the locality. These are matters to be considered in determining the rights and equities of the parties.

If the judgment of the trial court is allowed to stand, respondent, without any expense whatever to her or to the estate, in the care and improvement of the property, or the payment of taxes, would receive from the estate approximately four times the value of the real estate at the time of the death of her mother, and also her distributive share of the real estate in its greatly improved condition and enhanced value, as well as her distributive share of the twenty-four shares of canal stock, while the appellant, in his declining years, would be turned from the home he has established and

improved by a quarter of a century of toil, penniless.  We cannot give our approval to a rule of law which would result in a judgment so harsh.

As to the claim made by the appellant for the cost of the erection of the windmill placed on the premises, this being an improvement of a temporary character and **9, 10** necessitated mainly for the convenience of the appellant while occupying the premises, we think he would not be entitled to credit therefor.  Nor do we think he is entitled to credit for the $500 paid in satisfaction of the two notes, one given to Newman and the other to Neilson, as we think the only reasonable inference to be drawn from the evidence is that those notes were given for money borrowed by appellant for his own use, and that his wife signed them merely as surety, and that appellant, in paying those notes, was paying his own debt, and, of course, in such an event, would not be entitled to charge any portion thereof to the estate.  The evidence upon this subject is somewhat meager, and we do not attempt to make any final determination of the matter, but leave the question open, to be determined by the district court in the final settlement of the accounts of the administrator.

The appellant contends that the court erred in refusing to allow him to amend his answer by alleging that he had contracted with the respondent for the purchase of her interest in the real estate in question and had paid the consideration therefor, and also in holding that the respondent was the owner of an undivided two-fifteenths interest in the real estate.  This proceeding, however, being one to compel an accounting by the administrator, and for his removal, and the appointment of a successor, these questions cannot properly be determined in this proceeding, but may arise upon the distribution of the estate, or in an action by the appellant to compel the respondent to convey her interest in the estate, should he elect to bring such an action.

The judgment is reversed, and the cause remanded to the district court of Salt Lake county, with directions to set aside the findings of fact, conclusions of law, and judgment, to deny the petition for the removal of the appellant, as ad-

ministrator, to grant a rehearing upon the account of the administrator, and to settle such account in accordance with views expressed herein. Appellant to recover costs on this appeal.

CORFMAN, C. J., and FRICK, GIDEON, and THURMAN, JJ., concur.

WEBER, J., being disqualified, did not participate in the disposition of this case.