In the Matter of the ESTATE OF H. Everett POPE, Jr., Deceased.

**TULSA PROFESSIONAL COLLECTION SERVICES, INC., Appellant,**

v.

**Joanne POPE, Executrix of the Estate of H. Everett Pope, Jr., Appellee.**

**No. 62204.**

Supreme Court of Oklahoma.

Nov. 18, 1986.

Rehearing Denied March 10, 1987.

---

13. *Davis v. Gwaltney,* 291 P.2d 820, 824 (Okl. 1955).

St. John Medical Center. This debt had arisen from the expenses of the last illness of H. Everett Pope, Jr. Appellant initiated the current action by the filing of an application for an order compelling the payment of the expenses of the last illness of H. Everett Pope, Jr. The following facts were stipulated to by the parties in conjunction with the trial court's ruling on the application:

1. H. Everett Pope, Jr. ("decedent") was admitted to St. John Medical Center ("hospital") in Tulsa on 23 November 1978. He remained in the hospital until his death on 2 April 1979.

2. The expenses of decedent's hospital stay were in excess of $142,000.00. Decedent's insurer made some payments to hospital, leaving a net balance due of $14,657.55. The parties dispute the amount of the net balance due attributable to decedent's last illness.

3. Decedent's will was admitted to probate on 16 July 1979.

4. The qualified personal representative of decedent's estate published notice to creditors on 17 July 1979 and 24 July 1979.

5. No timely creditor's claim was presented to the personal representative within the applicable statutory period of 4 months [sic]. The parties dispute whether a creditor's claim was ever presented to the personal representative, but if presented, such claim was not approved. No suit to compel the personal representative to approve the claim has been filed.

6. Assignee filed an "Application for Order Compelling Payment of Expenses of Last Illness" on 17 October 1983. It was set for hearing on 10 November 1983. Upon the above stipulations of fact, briefs were scheduled to be submitted, and the matter was taken under advisement by the Court.

The trial court found that appellant's failure to file a claim for the debt within the time noted in appellee's publication of notice to creditors of the estate of H. Ever-

Naylor & Williams, Inc. by David A. Tracy and Randall E. Rose, Tulsa, for appellant.

Smith & Smith by Phillip K. Smith, Tulsa, for appellee.

LAVENDER, Justice:

I.

Appellant, Tulsa Professional Collection Services, Inc., was assigned a debt owed to

ett Pope, Jr., barred the assertion of the claim. The trial court denied appellant's application and this appeal ensued.

On appeal, as in the trial court, this dispute was characterized as a question of statutory interpretation. Appellee relied upon the general chapter in the probate code governing claims against the estate; specifically 58 O.S.1971 § 331, which provided in pertinent part:

Every executor or administrator must, immediately after his appointment, give notice to the creditors of the deceased, requiring all persons having claims against said deceased to present the same, with the necessary vouchers, to such executor or administrator, at the place of his residence or business, to be specified in the notice, within two (2) months from the date of the first publication of said notice; such notice must be published in some newspaper in said county once each week for two (2) consecutive weeks....

and 58 O.S.1971 § 333, which provided in pertinent part:

If a claim arising upon a contract heretofore made, be not presented within the time limited in the notice, it is barred forever, ....

Appellant, on the other hand, relied on the subchapter of the probate code governing payments of the debts of the estate. Appellant argued that 58 O.S.1971 § 594 dispensed with the requirement that a claim be filed in connection with the expenses of the last illness. Section 594 provides:

The executor or administrator, as soon as he has sufficient funds in his hands, must pay the funeral expenses, and the expenses of the last sickness, and the allowance made to the family of the decedent. He may retain in his hands the

necessary expenses of administration, but he is not obliged to pay any other debt or any legacy until, as prescribed in this chapter, the payment has been ordered by the court.

Both appellant and appellee argued authorities from other jurisdictions concerning the construction of statutes similar to section 594. Some authorities had found such a statute to relieve the necessity of filing a claim.[1] Appellee's authority had found that failure to timely file a claim had resulted in the claim being barred despite the presence of a statute similar to section 594.[2] Appellee also cited from this Court's statements in *State ex rel. Central State Griffin Memorial Hospital v. Reed*,[3] to the effect that:

The purpose of the nonclaim statute [58 O.S.1971 § 333] is to facilitate the handling and closing of estates. The legislature has considered the importance of this question in its amendment of the statute reducing the period of time within which the claim may be filed from four months to two months. Clearly this is an expression of the legislative concern for the expediting and disposing of administration of estates without delay.

The trial court concluded that a construction of section 594 which would have the effect of allowing certain claims to be maintained outside the time limits of the nonclaim provisions would be contrary to the legislative intent behind those provisions as set forth in *Central State Griffin Memorial Hospital*. On appeal, the Court of Appeals, Division IV, affirmed the trial court's ruling.

In reviewing the decisions of the courts below we find the reasoning applied to this question of law to be correct. In the case of *Rogers v. Oklahoma Tax Commission*,[4] we stated in Court's syllabus:

1. The authorities particularly relied upon by appellant were *In re Skillman's Estate,* 146 Iowa 601, 125 N.W. 343 (1910); *Wolfe v. Knapp,* 127 Iowa 479, 103 N.W. 369 (1905); *In re Hansen's Estate,* 55 Utah 23, 184 P. 197 (1919).

2. The authority presented by appellee in support of this proposition regarding the construction of

section 594 was *In re Estate of Bachand,* 307 N.W.2d 140 (S.D.1981).

3. 493 P.2d 815, 818 (Okla.1972).

4. 263 P.2d 409 (Okla.1952).

In the construction of statutes, harmony, not confusion, is to be sought. The true rule is that when two acts or parts of acts are reasonably susceptible of a construction that will give effect to both and the words of each, without violence to either, it should be adopted in preference to one which, though reasonable, leads to the conclusion that there is a conflict.

■ As properly noted by the Court of Appeals, the statutory framework of 58 O.S.1971 §§ 331 through 354 constitutes a system of safeguards against invalid and improper claims against an estate, as well as a system designed to expedite the administration of these estates. To find that section 594 would allow some claims to be maintained outside this system would directly conflict with the clear intent of these statutes. It is, moreover, possible to read the cited provisions in harmony. Section 594 provides that the personal representative of the estate must pay the expenses of the last illness as soon as funds are available when a proper claim[5] has been presented therefore.

## II.

Following the Court of Appeals' affirmance of the trial court's decision in this case, appellant petitioned that court for rehearing. In its petition for rehearing, appellant raised, for the first time, a due process argument based on an alleged failure to give actual notice of probate proceedings and of the necessity to file claims. Appellant asserted that appellee knew of the existence of its claim at the time notice was published pursuant to 58 O.S.1971 § 331. Appellant then argued that recent decisions of this Court[6] and other courts[7] required that actual notice be given under these circumstances. Appellant argued that to apply the bar of the nonclaims statute in the absence of actual notice to a known creditor would deprive that known creditor of due process.

In a supplemental opinion on rehearing the Court of Appeals rejected this argument and denied rehearing. In the supplemental opinion it was stated that the argument was procedurally defective as it was initially raised in the petition for rehearing. The Court of Appeals then dismissed the argument on the ground that there was no evidence to show that appellant did not have actual notice of the probate proceedings.

■ We first address the Court of Appeals' assertion that the question of due process is procedurally inappropriate for consideration. The question of adequacy of notice goes to the jurisdiction of the court.[8] A matter involving a question of jurisdiction should be considered even if submitted initially in a petition for rehearing.[9]

The Court of Appeals' disposition of appellant's argument on the grounds that there was no evidence to support a finding that appellant did not have actual notice is also erroneous. We have previously noted that the burden of affording proper notice rests on the party whose responsibility it is to give that notice.[10] And, since the operation of the nonclaims provisions result in the forfeiture of what might otherwise be meritorious claims, the burden of pleading and proof regarding compliance with the provisions properly rests on one claiming the benefit of those provisions.[11]

**5.** See *Reed v. Charles Broadway Rouse, Inc.,* 174 Okl. 522, 50 P.2d 1097 (1935).

**6.** *Cate v. Archon Oil Co., Inc.,* 695 P.2d 1352 (Okla.1985).

**7.** *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983); *Continental Ins. Co. v. Mosely,* 100 Nev. 337, 683 P.2d 20 (1985).

**8.** *Bomford v. Socony Mobil Oil Co.,* 440 P.2d 713 (Okla.1968).

**9.** See *Pointer v. Hill,* 536 P.2d 358 (Okla.1975); and see also *Davis v. Sandlin,* 392 P.2d 722 (Okla.1964).

**10.** *Bomford v. Socony Mobil Oil Co.,* 440 P.2d at 719.

**11.** See *Hitt v. J.B. Coghill, Inc.* 641 P.2d 211 (Alaska 1982).

The question of the notice required under 58 O.S.1971 § 331 has not been previously addressed by this Court. However, the question of the sufficiency of notice required to meet due process requirements in the context of the operation of nonclaims statutes has been addressed in a number of jurisdictions. Examining the relation of the nonclaims statutes to the line of cases originating with *Mullane v. Central Hanover Bank and Trust Co.,*[12] and culminating most recently in *Mennonite Board of Missions v. Adams,*[13] the courts have clearly held that the reasoning behind those cases was not applicable to the operation of the nonclaims statutes.[14] Most recently, the Supreme Court of Missouri, in addressing the question of the applicability of due process requirements set forth in the United States Supreme Court cases following *Mullane,* stated:[15]

These cases make it clear that when the rights or interests of a person are sought to be affected by judicial or quasi-judicial decree, due process requires that the person be given notice reasonably calculated to inform that person of the pending proceeding and an opportunity to appear and object. However, we do not believe this doctrine requiring more notice than that afforded by publication should be applied to notice under nonclaim statutes. The function served by notice is different, as is the nature of the right being affected. In *Mullane,* and the cases following it, the person to be notified was, in effect, made an actual party to the litigation by the notice, and the judgment of the court operated directly on that person's property. Notice under a nonclaim statute does not make a creditor a party to the proceeding; it merely notifies him that he may become one if he wishes.

Other state courts have summarily dismissed the notion that *Mullane* is applicable in the context of notice to creditors in probate proceedings. In two recent cases, state appellate courts have applied a more exhaustive analysis to deny application of *Mullane* to their nonclaim statutes. See *In re Estate of Fessler,* 100 Wis.2d 437, 302 N.W.2d 414 (1981); *Gano Farms, Inc. v. Estate of Kleweno,* 2 Kan.App.2d 506, 582 P.2d 742 (Kan. App.1978). The Washington Supreme Court, faced with the same due process contention stated:

In support of its contention that [the nonclaim statute] does not accord due process of law in that it goes no further than to require publication of notice to creditors in a newspaper, appellant cites *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865. That case has no application to such a statute as [ours]. Its doctrine was applied to a case where property rights were being brought before a court for adjudication such as those of beneficiaries under trusts, and where the addresses of such beneficiaries were known to the trustee. The basis of the decision is that notice by publication alone is not sufficient to accord due process under such circumstances.

Appellant is the victim of its own fault and nonaction by its failure to comply with a mandatory statute of nonclaim for which the courts can give it no relief. (Emphasis ours).

*New York Merchandise Co. v. Stout,* 43 Wash.2d 825, 264 P.2d 863, 864 (1953).

We agree with this distinction and believe that the nonclaim statute, and its potential for barring a creditor's claim,

---

**12.** 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

**13.** Supra, note 7.

**14.** *Brunell Leasing Corp. v. Wilkins,* 11 Ariz.App. 165, 462 P.2d 858 (1969); *Gano Farms, Inc. v. Estate of Kleweno,* 2 Kan.App.2d 506, 582 P.2d 742 (1978); *Estate of Busch v. Ferrell-Duncan Clinic, Inc.,* 700 S.W.2d 86 (Mo.1985); *Baker*

*National Bank v. Henderson,* 151 Mont. 526, 445 P.2d 574 (1968); *New York Merchandise Co., Inc., v. Stout,* 43 Wash.2d 825, 264 P.2d 863 (1953); *In re Estate of Fessler,* 100 Wis.2d 437, 302 N.W.2d 414 (1981).

**15.** *Estate of Busch v. Ferrell-Duncan Clinic, Inc.,* 700 S.W.2d at 88, 89.

does not constitute an adjudicatory proceeding. The due process requirements of *Mullane* are not applicable to these probate proceedings. Section 473.360 is a self-executing statute of limitations. See *Rabin v. Krogsdale,* 346 S.W.2d 58 (Mo.1961); *Clark v. Organ,* 329 S.W.2d 670 (Mo. banc 1959). The bar created by operation of a statute of limitations operates independently of any adjudicatory process. It is a legislative expression of policy that prohibits litigants from raising claims after the expiration of a given period of time. The passage of time itself destroys the right and remedy of the potential claimant. See *In re Estate of Fessler,* supra, 302 N.W.2d at 420. (footnote omitted)

■ The Oklahoma probate nonclaim statute, 58 O.S.1971 § 333, like the statutes under consideration in the Missouri case and the other cases cited, acts to cut off potential claims against the decedent's estate by the passage of time. It is the giving of notice as required by 58 O.S.1971 § 331, which starts the time period running for the operation of the nonclaims statute.[16] Since the action of the statute upon the potential claims is nonadjudicatory in nature, we agree with the reasoning of the cited cases that actual notice of the potential operation of the statute of nonclaims is not required to constitute due process.[17]

The parties to this case stipulated that the personal representative of the estate of H. Everett Pope, Jr., published notice as required by 58 O.S.1971 § 331, and that appellant failed to file the required claims within the period initiated by the filing of that notice. Upon these facts the trial court correctly ruled that the claims were barred by the operation of the nonclaims statute.

### III.

Opinion and Supplemental Opinion on Rehearing of Court of Appeals, Division IV,

entered in this matter are VACATED. Order of the trial court AFFIRMED.

HARGRAVE, ALMA WILSON and SUMMERS, JJ., concur.

DOOLIN, V.C.J., dissents in Part I, concurs in Part II.

OPALA and KAUGER, JJ., concur in Part I, dissent in Part II.

SIMMS, C.J., and HODGES, J., dissent.

DOOLIN, Vice Chief Justice, concurring in Part II, dissenting to Part I.

The trial court's ruling undoubtedly represents the traditional position of the Oklahoma Bar, when it requires compliance with the non-claim statute of this State, 58 O.S.1981, § 331, et seq. According to this requirement, if the claim for last illness be not presented within the time limit of the notice section, § 331 "it is barred forever."

It is the position of this Claimant that the expenses of last illness are exceptions to the non-claim statutes.

We start with 58 O.S.1981, § 594 which states:

"The executor or administrator, *as soon as he has sufficient funds in his hands,* must pay the funeral expenses, *and the expenses of the last sickness,* and the allowance made to the family of the decedent. He may retain in his hands the necessary expenses of administration, but he is not obliged to pay any other debt or any legacy until, as prescribed in this chapter, the payment has been ordered by the court." [emphasis added.]

This statute, commencing with a direct order and statement that the executor or administrator *must* pay the expenses of

---

16. *Inman v. Western National Bank of Ft. Worth,* 83 Okl. 126, 200 P. 714 (1921).

17. Appellant has relied upon the case of *Continental Ins. Co. v. Mosely,* supra, note 7, to support its argument regarding the sufficiency of notice. The Supreme Court of Missouri, in *Es-* *tate of Busch,* 700 S.W.2d at 87, footnote 2, rejected the reasoning of *Continental* on grounds we find persuasive and we too reject the assertion that *Continental* necessitates a contrary result to that reached in this opinion.

last illness when funds become available, is controlling as to those expenses and the final phrase, which states he is not required "to pay *any other* debt" until ordered by the Court refers to antecedent debts contracted for prior to the demise and covered by the non-claim statutes.

The legislature, on adoption of the probate code had no previously decided cases from the Dakotas or California [1] interpreting the enacted statute so there appears no impediment to a fresh or initial interpretation at this time.

Section 594 distinguishes and sets apart expenses of the "last illness" and creates a special or preferred debt status for such expenses. It speaks only of *debts*, not claims.

Title 58 O.S.1981, § 591 further specializes and differentiates between ordinary claims incurred by the decedent before demise when it fixes or sets priority in the order of payment of debts.

§ 591. *Order of Payment of Debts.*

1. Funeral expenses.
2. The expenses of the last sickness.
3. . . .
4. . . .
5. . . .
6. . . .
7. Demands or claims which are presented to the executor or administrator for an allowance or proved within two months after the first publication of notice to creditors.
8. . . .

Of what purpose was the enactment of Sections 1, 2 and 7 of § 591 if the act of the Legislature did not intend a special preferred debt status and special position of § 594 claims, over the non-claim statutes? Was the enactment of §§ 594 and 591 a vain and useless action of that long-forgotten Legislature?

Also pertinent are §§ 311 and 312 of Title 58 in the 1981 statutes.

Section 311 lists property to be delivered to the family of the deceased as homestead, and states the surviving husband or wife is entitled to possess the homestead, as are the children if both husband and wife be deceased. The statute ends with this statement:

"No such property shall be liable for any prior debts or claims whatever." (Thus differentiating again between debts and claims).

Title 58 O.S.A. § 312 presents us with our old nemesis, "last illness" when, after increasing the property mentioned in the preceding section, (58 O.S.1981, § 311), states "there shall also be allowed and set apart to the surviving wife or husband or minor child or children of the decedent all such personal property or money as is exempt by law from levy and sale on execution ... to be, liable *for any prior debts* or claims against the decedent, except when there are no assets thereunto available, for the payment of the necessary *EXPENSES OF HIS LAST ILLNESS*, funeral charges ...." [emphasis added].

Section 312 has not been heretofore interpreted, but it again gives expenses of the last illness priority, special effect, and is entitled to preferred debt status over other ordinary claims.

In 1937, we dealt with expenses of the funeral, and referred to § 1258 of the 1931 statutes as being controlling. Section 1258 is now codified as 58 O.S.1981, § 594. *In Re Wagner's Estate*, 62 P.2d 1186, 1191 (Okl.1937), quotes *Golden Gate Undertaking Co. v. Taylor*, 168 Ca. 94, 141 P. 922, 924, 52 A.L.R. (N.S.) 1152, Ann.Cas. 1915D, 742, which observed:

"Not only, then, is the charge for funeral expenses a debt of the estate, but is a preferred debt of the first class, and is payable as soon as the executor or

---

**1.** Historical note: The Probate Code in effect in Oklahoma may be traced from California through the Dakotas (See 1 Huff, Oklahoma Probate Law 10). The Supreme Court of South Dakota, in *Estate of Bachand,* 307 N.W.2d 140

(1981), held that a claim *must* be filed under a statute such as our § 594. Although this case is persuasive, it is not necessarily controlling because its ruling comes more than 80 years after our adoption of 58 O.S.1981, § 594.

administrator has sufficient funds in his hands....."

It is true the Oklahoma Court in *In Re Wagner's Estate* also made the distinction that a funeral claim was not one made by the decedent in his lifetime, and no claim need be filed. There is little need for this obvious distinction, for one ordinarily does not incur the expenses of one's own funeral until death. The importance of that case lies in its classification of such a § 594 debt as being a preferred debt, one to be treated differently by the executor. Since the phrase "expense of last illness" directly follows the term "funeral expenses" in the statute, there is little ground for us to suppose the legislature intended that funeral expenses could be paid without a formal claim, but not so expenses of the last illness. Stated another way, the language of *Wagner's Estate* emphasized the administrator's statutory duty to pay funeral (i.e. preferred) debts out of the "first funds in his hands"; and inasmuch as both funeral expenses and expenses of last illness are undifferentiated preferred debts, there is no basis for a different rule for each.

I would find the Probate statutes, §§ 311, 312, 591 and 594, are special or specific acts which must control over the general statutes.[2] This maxim or rubric is one of long standing and should be grafted to and ingrained in the law of decedent's estates.

To argue that § 594 does not do away with the necessity of filing a claim for expenses is to beg the question. This argument, which I take to be ill-founded, begins by accepting the desired result (that filing a claim is necessary) as fact and then uses that fact to prove the argument. Such circular reasoning is illogical and smacks of a non-sequitur and it should not, therefore, be used to decide a question of fundamental, statutory interpretation.

Lastly, the appellee's argument that a claim must be filed for payment of the expenses of last illness raises a new question even as it seeks to resolve the one before us. How, in light of the rule stated herein, are the courts to interpret and give effect to language commonly found in wills wherein the testator specifically directs the executor "to pay the expenses of my last illness and funeral"? Such clauses are as old as testaments themselves and, as long as they are not precatory in nature, should be considered valid orders by the decedent which direct payment of these preferred debts without the necessity of further action, such as the filing of a claim. To a testator attempting to put his affairs in order as he contemplates the inevitable, nothing is dearer than the assurance that he has provided, as well as he can, for proper medical care in his final days and for a decent burial. These are matters which I would not now infuse with uncertainty.

In summary, I would hold that funeral expenses and expenses of last illness are debts of a special status. We base such finding on the plain language of 58 O.S. 1981, § 594 and upon the broader consideration of the importance of these services, both to the testator and to society at large. The Court of Appeals of Louisiana stated the matter very well in *Succession of Barry*, 236 So.2d 660, (La.App.1970), when it said:

> Humanitarian considerations underlie the granting of this (preferred debt) privilege of high rank in favor of those to whom claims are due for services rendered in time of need. In the event of death, the physician and others rendering those services are assured that their charges will not be treated as ordinary debts with less chance of payment. This obvious intent is to make it less likely that one will be deprived of much-needed service because of doubtful means of payment. [parenthetical phrase added]

---

**2.** Where there are two statutory provisions, one of which is special and clearly includes the matter in controversy, and prescribes different rules and procedures from those in the general statute, the special statute and not the general statute applies. *Southwestern Bell Telephone Co. v. Oklahoma County Excise Board,* 618 P.2d 915 (Okl.1980).

See also: *Wolf v. Knapp*, 103 N.W. 369 (Iowa 1905) and *In Re Hansen's Estate*, 184 P. 197 (Utah 1919).

Clearly, these are the same laudable goals embodied in our statute by the original drafters of the Oklahoma probate law, and there is a clear intent to give these two classes of debts preferred status. That this opinion comes some 79 years after statehood and after two or more generations of probate lawyers is no argument that its reasoning and its ideals are invalid. A misinterpretation of the law is no less wrong for its longevity.

The majority opinion quotes *State ex rel. Central State Memorial Hospital v. Reed*, 493 P.2d 815, 818 (Okl.1972).[3]

I believe the quote to be dicta for the action clause says, and as edited by West Publishing Co., its prime thrust is to establish that a state institution is subject to the same non-claim statute, 58 O.S.1981, § 331, et seq. as any other creditor.

We know from reading *Central State Hospital*, supra, that a claim was disallowed some three years after the notice to creditors had been given and an appeal was taken. We also know that a claim was based on treatment of a wife for whose care he was responsible covering a period of twelve years prior to his death. We know that claim was disallowed and that a *separate action* on *the claim* was commenced approximately three years after notice to creditors. This is not the same fact situation as in the instant case. The course of action in the case at bar is bottomed on a question of purported statutory right under 58 O.S.1981, § 594.

It is my contention that under 58 O.S. 1981, § 596[4] this statute must be followed in the instant case for the reason there is a disputed claim (or debt) against the estate, and that the executor or administrator would be required to pay the amount of the disputed claim into court because the appeal pends. As further proof of the differences in the posture of the two cases, we note there never was a rejected claim on which an action was based under 58 O.S. 1981, § 339 in the instant case.

If on the other hand a final accounting had been rendered and it had become final Sec. 596, supra, would never be triggered. The same reasoning should be our solution to the case before us today, for we know that "this estate, however, . . . is still pending and is solvent so that a delay in the expeditor's closing . . . is not an issue."[5]

I would suggest that the rule to be established by this case and for application prospectively should be: If a creditor fails to make known a disputed claim or debt under the facts and circumstances of this case by a separate action or timely objection to a final accounting then no cause of action arises under 58 O.S.1981, § 594. This cause of action is not a suit on a rejected claim, it is the equivalent of payment of funeral expenses without claim.

My holding on the issues of the necessity of filing a claim might render it unnecessary to address the second allegation of failure of notice. *Cate v. Archon Oil Co.*, 695 P.2d 1352 (Okl.1985); *Mullane v. Cen-*

---

**3.** The purpose of the nonclaim statute [58 O.S. 1981, § 331] is to facilitate the handling and closing of estates. The legislature has considered the importance of this question in its amendment of the statute reducing the period of time within which the claim may be filed from four months to two months. Clearly this is an expression of the legislative concern for the expediting and disposing of administration of estates without delay.

**4.** If there is any claim not due, or any contingent or disputed claim against the estate, the amount thereof, or such part of the same as the holder would be entitled to if the claim were due, established or absolute, must be paid into court, and there remain, to be paid over to the party when he becomes entitled thereto; or, if he fails to establish his claim, to be paid over distributed as the circumstances of the state require. If any creditor whose claim has been allowed, but is not yet due, appears and assets to a deduction therefrom of the legal interest for the time the claim has yet to run, he is entitled to be paid accordingly. The payments provided for in this section are not to be made when the estate is insolvent, unless a pro rata distribution is ordered. See also, 58 O.S.1981, § 611.

**5.** This quote is from the creditor's brief and is unchallenged by the estate.

*tral Hanover Bank,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1949); *Bomford v. Socony Mobil Oil Co.,* 440 P.2d 713 (Okl.1968). Although, I strongly support these cases but believe Probate Proceedings with reference to notice grant process that is due to the parties. The authorities cited by the majority and reasoning thereof is soundly convincing.