HELMERICH & PAYNE, Inc., v. CARSON OIL CO. et al.

No. 32885.   March 23, 1948.

Rehearing Denied July 20, 1948.

*196 P. 2d 852.*

Frank Settle, E. O. Monnet, and Sam Clammer, all of Tulsa, for plaintiff in error.

A. D. Cochran and Kenneth H. Lott, both of Okmulgee, for defendants in error.

ARNOLD, J.   The defendants, Carson Oil Company and Oklahoma Oil Company, were joint owners of a lease covering certain lands in Hughes county. Being desirous of having a Wilcox sand test, the Carson Oil Company made a contract with Helmerich & Payne, Inc., to drill a well on a described portion thereof which was evidenced by letters between it and plaintiff, Helmerich & Payne.

In the letter of Carson Oil Company, it is said:

"Mr. Cochran of the Oklahoma, put a question to me, regarding the meaning of the clause in the fourth paragraph, 'When we have taken a core in the Wilcox sand or have run casing at your request.' I stated that this meant that when a core is taken in the Wilcox sand and we decide not to run pipe because the well is a failure at that point, your contract is complete, or if we elect to run casing to test out well, your contract will be completed upon the running of the pipe. In your letter of transmittal of the contract, please say a word or two about this so that I may show the same to Mr. Cochran."

In its reply letter Helmerich & Payne said:

"You are desirous of drilling a test well on a location described as the center of the northeast ten acre. of the northwest sufficient to test the Wilcox sand which is found in his area at a depth of approximately forty-seven hundred feet deep."

Therein it is also said:

"Our contract shall be deemed to have been fulfilled and at an end when we have taken a core in the Wilcox sand and/or have run casing at your request."

Plaintiff drilled the well to 4,802 feet where it cored to about 4,813 feet at the direction of Carson Oil Company. It claims that this core was taken in the Wilcox sand and, according to the terms of the contract, the well was complete and its obligation under the contract was at an end.

Plaintiff introduced evidence in support of the allegations of its petition that the Wilcox sand was encountered at the 4,802 ft. depth. It also introduced evidence, which it says stands uncontradicted, that the Wilcox sand was encountered and cored at about 4,830 feet.

Defendants offered evidence to support their contention that the Wilcox

sand was not found at either of the aforementioned levels. Their evidence also tends to support the denial of Carson Oil Company "that said well was drilled to a depth sufficient to test the Wilcox sand or that a core was taken in the Wilcox sand before March 21, 1937, or at a lesser depth than 4,941 feet." Their testimony as to the character and sufficiency of the cores taken to test the Wilcox shows unmistakably that the defendants, if necessary, would have contended that the contracting parties anticipated and intended that the well should be drilled to a depth sufficient to fully explore and test the Wilcox horizon, and the contract should be so construed.

Treating the request of plaintiff for findings of fact and conclusions of law as an outright request therefor, the trial judge made a so-called finding that the well was not completed until the depth of about 4,940 ft. was reached. (This is the level at which "solid" Wilcox sand was encountered and the formation was saturated with salt water; the well was plugged and abandoned with the consent of everybody interested.)

The price for drilling the well ($14,-000) was guaranteed by "bottom hole" letters to Carson Oil Company; at least one of these letters—the one from the Magnolia for $8,000—promises payment only after exploration of the Wilcox sand satisfactory to it and the evidence tends to show that the Magnolia was not satisfied with any test made prior to the one made at the depth of abandonment of the well. There is also evidence that the Carson Oil Company was insolvent and unable to pay except by contribution upon completion of the well according to the bottom hole letters.

The plaintiff specifically asked the trial judge to find that the Wilcox sand was encountered and cored at the levels hereinbefore mentioned.

In accordance with the conclusively established value of the extra cores, coreheads, and drill stem test, the court entered judgment against the Carson Oil Company only for $432.60. No complaint is made as to the amount of the judgment for these items, but in accordance with its conclusion that the well was not completed before the depth was reached at which it was plugged and abandoned, the court denied judgment for drilling, circulating, etc., below the 4,802 ft. level.

The plaintiff presents its alleged errors, under four propositions thus stated:

"It was the duty of the trial court, upon due request of the plaintiff, to make findings of fact and conclusions of law responsive to the issues of fact and law tendered; and the trial court failed to perform that duty in this case."

"Owners of an oil and gas lease become mining partners by agreement or by joining together in actual development; thus rendering them personally liable jointly and severally as partners for debts incurred by either in drilling or developing the lease."

" 'Where one performs for another, with the other's knowledge, a useful service of a character that is usually charged for, and the latter expresses no dissent and avails himself of the service, a promise to pay the reasonable value of the service is implied.' "

Plaintiff contends that its contract was fulfilled and completed under the terms of the contract when it encountered the Wilcox sand and cored it; that that was done and the well completed at 4,802 feet; that, as requested, it was entitled to a finding whether or not the Wilcox sand was encountered and cored at a higher level than the abandonment depth. Otherwise, it says, it could not properly save exception to the judgment because the sole fact on which it relied, under its interpretation of the contract, was not found by the court. In this connection it also argues that the purported finding that the well was not completed until the depth of approximately 4,940 feet was reached

is a conclusion. It points to the statement of the defendants that the only question of fact presented to the trial court was "when and at what depth did the plaintiff take a core in the Wilcox sand?"

If this is the only issue of fact for determination, and it is if the interpretation of the contract placed thereon by plaintiff is correct, then the necessity for its determination is apparent. The right of the plaintiff to recover is dependent upon a finding that the Wilcox sand was encountered and cored at either the approximate depth of 4,800 or 4,830 feet, and an interpretation of the contract to the effect that the well was complete when the Wilcox sand was encountered and cored, though the test thereby furnished was not sufficient to test the Wilcox horizon in the area. How was the conclusion that the well was not completed until the abandonment depth of approximately 4,940 feet was reached arrived at? Did the trial judge find that the Wilcox sand was not encountered and cored at any point above that depth, or did he construe the contract to require a full exploration of the Wilcox sand or horizon; and in this connection determine that the sand theretofore encountered and cored, though Wilcox, or containing Wilcox sand, did not furnish a test of the Wilcox in that area? We cannot give the answer. The plaintiff could not intelligently and accurately present his exception by pointing out the alleged error of the trial court.

If the trial court determined that the Wilcox sand had not been reached, where the cores were taken above 4,940 feet, then it would be necessary to construe the contract and determine whether full exploration of the Wilcox horizon was required under the contract. This the trial court also refused to do.

This court may not assume in this sort of situation that a trial court found the facts a certain way on a controverted matter. The material and necessary facts to support its conclusion must be determined by the trial court; and where timely request is made therefor, it must make such findings in written form. We are unable to find where the trial judge found that the Wilcox sand was not encountered and cored at a higher level than 4,940 feet, nor can we find any determination of facts by him on which to base his conclusion that the well was not completed until the hole was drilled to about 4,940 feet. Without a determination of such facts, we cannot answer the contentions made by plaintiff because he cannot present them to us without indulging in what might be erroneous conclusions as to the undisclosed state of mind by the trial judge.

The cases cited by the parties are abstractly in point with our views herein expressed, but are of little help on the point because of factual dissimilarity.

Reversed.

DAVISON, V.C.J., and BAYLESS, WELCH, CORN, and LUTTRELL, JJ., concur. HURST, C.J., and GIBSON, J., dissent.