Carl E. DAVIS et al., Plaintiffs in Error,

v.

James GWALTNEY et al., Defendants
in Error.

No. 36578.

Supreme Court of Oklahoma.

Dec. 20, 1955.

Windham & Windham, Poteau, Shaw & Spencer, Mena, Ark., for plaintiffs in error.

Alpheus Varner, Poteau, for defendants in error.

WILLIAMS, Vice Chief Justice.

This action was brought by Carl E. Davis and Nora V. Davis, hereinafter referred to as plaintiffs, against James Gwaltney and Ollie Gwaltney, hereinafter referred to as defendants, for rescission of contract, cancellation of note and mortgage and restitution of $8,000 down payment on purchase price of a ranch and herd of cattle. Trial was had to the court and judgment rendered for defendants from which plaintiffs appeal.

This action arises out of a transaction whereby plaintiffs purchased a ranch and herd of registered cattle from defendants for a total purchase price of $21,000. On September 15, 1952, defendants executed and delivered to plaintiffs a warranty deed to 200 acres of land and a bill of sale to 45 head of registered cattle. Plaintiffs made a down payment of $8,000 and executed a note and mortgage for the balance of the purchase price. The bill of sale to the cattle contained a warranty of title, an agreement that defendants would within not more than three months, execute proper transfers of the papers evincing the registration of the cattle unto plaintiffs, and a statement that the cattle were marked with a swallow fork in the right ear and were tattooed with registration numbers. As a part and parcel of the same transaction defendants executed a memorandum agreement whereby they agreed to use their best efforts to acquire a good title to an additional specified 40 acres of land within a reasonable time and to convey the same to plaintiffs without any further consideration, and if not able to acquire a good title to said 40 acres within a reasonable time to execute and deliver to plaintiffs a quitclaim deed to said 40 acres.

Plaintiffs base their claim of right to rescission on both fraud and failure of consideration. They allege that defendants represented that there were 45 head of registered, whiteface cattle on the ranch and executed and delivered a bill of sale to 45 head of registered whiteface cattle, but that only 40 whiteface cattle were on the ranch; that defendants wholly failed to execute and deliver the cattle registration certificates within three months but instead delivered 36 registration certificates in approximately 7 months, 14 of which did not match any of the cattle on hand and have never delivered the other 9 registration certificates at all; that defendants represented that the herd of whiteface cattle were registered and had been kept under fence, when in fact the cattle had been permitted to use the open range during the years prior to the sale to plaintiffs and such use of the open range has destroyed the value of the herd for breeding purposes;

that defendants knowingly represented to plaintiffs, with intent to induce plaintiffs to purchase the ranch, that the fruit orchard thereon was highly productive of high quality fruit and had produced $4,000 worth of fruit during the previous year, when as a matter of fact such orchard is unproductive and had been so during the previous year; that defendants agreed to furnish within a short period of time an abstract of title showing a good and merchantable title to the 200 acres of land involved but have wholly failed and refused to furnish such abstract; that defendants had agreed to use their best efforts to acquire a good title to an additional 40 acres of land within a reasonable time and convey the same to plaintiffs without any further consideration, and if not able to acquire a good title thereto within a reasonable time to execute and deliver to plaintiffs a quitclaim deed thereto, but that defendants had made no effort to acquire a good title to said 40 acres and failed and refused to convey the same to plaintiffs. The evidence offered by plaintiffs reasonably tended to support plaintiffs' contentions.

Defendants answered with specific denials of plaintiffs' allegations and a plea of estoppel. At the trial of the case, defendants' contentions and evidence were as hereinafter stated. With reference to the alleged shortage in the number of cattle, defendant James Gwaltney testified that he told plaintiffs there were 42 head of registered cattle in the pasture and three weaned calves outside the pasture and that he sold plaintiffs the three calves at their own risk and if they never got them it was their hard luck. He offered no explanation as to why there were only 40 head of cattle present nor did he deny that there were only 40 actually present. With reference to the alleged deficiencies in the registration certificates, defendants admitted that only 36 such certificates had been delivered and that all but one of those delivered had been delivered some seven months after the sale in question. Defendants offered no excuse for failure to deliver the remaining 9 certificates and no explanation as to why 14 of the certificates delivered did not match any cattle present, except that defendant

James Gwaltney testified that if there were errors in the certificates they were just honest mistakes. With reference to the alleged use of the open range by the herd, defendants' evidence was to the effect that only those cows which had been bred and were with calf had been allowed the use of the open range and that the integrity of the herd for breeding purposes had therefore not been damaged thereby. With reference to the orchard, defendants' evidence was to the effect that no representations had been made concerning the yield of such orchard, but on the contrary defendants had advised plaintiffs that the orchard had not been cultivated for some time and would require considerable care and cultivation to make it produce. With respect to the abstract covering the 200 acre tract of land, defendants contended that they had not agreed to bring the same down to date, but had merely agreed to turn over the abstract in their possession to plaintiffs. Defendants testified they had offered the abstract to plaintiffs, without having it brought down to date, and that plaintiffs had not accepted it. It is undisputed, however, that the abstract is still in defendants' possession.

With reference to the additional 40 acres of land, defendant James Gwaltney testified that he told plaintiffs that if they would pay the expenses he would help them get a clear title. He further testified he had never refused to deliver a quitclaim deed to plaintiffs. It is undisputed, however, that no such deed has ever been executed or delivered. It appears that the 40 acres in question was restricted Indian land and that defendants had secured a deed thereto but the same had not been approved by the county court. At the time of the sale here involved defendants had pending in the county court a proceeding to secure the approval of such deed, but after the sale this proceeding was dismissed. Defendant James Gwaltney testified the proceeding was dismissed because an incorrect description of the land had been used in the proceeding. It does not appear that defendants made any further effort to perfect title to the 40 acres or to convey the same to plaintiffs.

The trial court made findings of fact and conclusions of law in which the following findings were made: that there was no fraud in the transaction; that the representations, if any, made by defendants as to the productivity of the orchard were only speculative; that the promise to execute a quitclaim deed to the 40 acre tract was a minor part of said contract and trivial in nature and that defendant testified he had never refused to execute said quitclaim deed; that there is no question but that the cattle in question were thoroughbred stock and the testimony only showed a discrepancy in the certificates that can be straightened out and adjusted with the Hereford Association with very little time and expense. The court made no finding whatsoever with reference to the alleged shortage in the number of cattle delivered or with reference to the alleged destruction of the value of the herd for breeding purposes because of use of the open range or with reference to the alleged failure to furnish an abstract of title or with reference to the alleged failure of defendants to use their best efforts to acquire a good title to the 40 acre tract, although both parties submitted requested findings of fact covering these issues. The court concluded as a matter of law that the evidence was not sufficient to sustain the allegations of fraud and that the failure to deliver the quitclaim deed and the discrepancies in the registration certificates were not of such nature as to defeat the purpose of the contract and hence not grounds to rescind.

Plaintiffs assert that the findings of fact, conclusions of law and judgment of the court are not supported by the evidence and are against the clear weight of the evidence and contrary to law.

The evidence as to fraud in the case was in direct conflict and the trial court resolved that issue in favor of defendants.

■ With regard to the alleged failure of consideration, there is some conflict in the evidence with respect to some items covered by the agreement of the parties but there is a large area concerning which there is no conflict in the evidence. It is undisputed that only 40 head of thoroughbred cattle were present or delivered whereas the bill of sale called for 45 head. It is undisputed that the cattle registration certificates were not delivered in the time agreed upon and that 9 of them have never been delivered at all and that 14 of those delivered do not correspond to any cattle on hand. While there is a dispute as to whether defendants were to have the abstract brought down to date or not, there is no dispute that plaintiffs have not received the abstract, either with or without extension. There is likewise no dispute in regard to the fact that defendants have made no effort to acquire a good title to the 40 acre tract and have not executed and delivered a quitclaim deed thereto to plaintiffs. Defendants contended that they were not required to make any effort to acquire a good title to the 40 acre tract until plaintiffs put up the necessary expense money, but the written agreement which defendants signed negates any such contention. Such agreement specifically provides that defendants shall use their best efforts to acquire a good title and convey the same to plaintiffs *without any further consideration.* It therefore appears that there has been at least a partial failure of consideration, since, so far as the record now before us reveals, plaintiffs have not received everything that they contracted for.

■ By virtue of the provisions of 15 O.S.1951 § 233, a party to a contract may rescind the same if through the fault of the party as to whom he rescinds, the consideration for his obligation fails in whole or in part, or if such consideration, before it is rendered to him, fails in a material respect, from any cause. We have held that a partial failure of performance is ground for the rescission of a contract, when such failure defeats the object of the contract, or when it concerns a matter of such importance that the contract would not have been made if default in that particular had been expected or contemplated. G. A. Nichols, Inc., v. Hainey, 190 Okl. 242, 122 P.2d 809, 139 A.L.R. 967; Wallace v. Smith, 205 Okl. 557, 240 P.2d 799.

■ From the record presently before us, it would seem that the number of cattle sold, the delivery of the registration certificates, and the agreement with respect to the 40 acre tract of land were all important elements of the sale. In this connection, plaintiffs' testimony that they would not have entered into the purchase agreement if such elements had not been a part thereof is uncontradicted. Since the evidence is uncontradicted that there has been a partial failure of consideration, the question of whether the failure in any of the respects alleged and proven was concerning a matter of such importance that the contract would not have been made if default in that particular had been expected or contemplated, or was of such nature as to defeat the object of the contract, is highly material to the proper disposition of the case. A request for separately stated conclusions of fact and conclusions of law was made to the court in accordance with 12 O.S.1951 § 611, and the court undertook to comply with such request. Although both parties submitted requested findings of fact and conclusions of law which adequately covered the issues in the case, the court rejected the requests of both sides and made so-called findings of facts and conclusions of law of his own. Under such circumstances the findings made by the court must cover all facts material and necessary to support its conclusion. Helmerich & Payne, Inc., v. Carson Oil Co., 200 Okl. 477, 196 P.2d 852. The findings made by the court in this case are totally inadequate in such respect. The matters concerning which the court made no finding whatsoever have already been hereinabove set out. In addition to the failure to cover all the issues presented, the findings are erroneous in still another respect. In connection with the cattle registration certificates the court made the following finding:

"There is no question under the proof in this case but that all the animals there and belonging to said herd are thoroughbred stock, and the testimony only shows as a matter of fact, there is a discrepancy in the certificates that can be straightened out and adjusted with the Hereford Association with very little time and expense."

We are unable to find any evidence whatsoever in the record to support such finding. The evidence that only 36 certificates out of the 45 due had been delivered and that 14 of the 36 certificates delivered did not match any cattle present is uncontradicted. There is, however, not one iota of evidence as to whether the deficiencies in the certificates could be corrected and if so, how, and the extent of time and expense that would be necessary to effect such correction. The court's finding in that regard is therefore not supported by the evidence.

■ It is not the function of this court to make an initial determination of fact questions which have been properly presented to the trial court but not determined by it. We are therefore of the opinion that the failure of the trial court to determine all of the issues properly presented, together with the error above pointed out in such findings as were made, requires that the judgment be reversed with instructions to grant a new trial, unless plaintiffs are estopped to claim the rescission sought as contended by defendants and found by the trial court. See Helmerich & Payne, Inc., v. Carson Oil Co., supra.

■ The basis of such claim of estoppel is the fact that plaintiffs sold certain timber off of the 200 acre tract of land. The facts in connection with such sale of timber are not completely clear from the evidence, but it appears that in May of 1953 plaintiffs sold some pine timber from the 200 acre tract in question to a timber buyer from Cove, Arkansas, for the sum of $1,200. The timber buyer delivered a check dated May 16, 1953, in payment for such timber and commenced cutting the timber. Defendants apparently learned of the sale and cutting of the timber and notified the timber buyer that they held a mortgage on the property and requested that he desist from cutting of timber. The timber buyer thereupon stopped operations, having cut and removed about $300 worth of timber, and commenced garnishment proceedings

in Polk County, Arkansas, to recover the money paid for such timber. As a result of such proceedings, the timber buyer recovered $900 and the remaining $300 was paid into court pending the outcome of this action. On June 17, 1953, plaintiffs gave written notice to defendants of their election to rescind. Such notice set out the above described sale of timber and offered to turn over the proceeds of such sale to defendants as well as to restore everything of value received by plaintiffs under the contract. On July 11, 1953, plaintiffs filed their petition in this action, and such petition likewise tendered restoration of everything of value received by plaintiffs, including the proceeds of the sale of timber. Plaintiffs' petition alleged that they had contracted to sell the timber prior to the discovery of the fraudulent and deceitful acts and representations of the defendants. Defendants contend that plaintiffs sold the timber some eight months after the contract sought to be rescinded was made and at the time of the sale had full knowledge of all the terms and conditions connected with said contract and are therefore estopped thereby from rescinding the contract. In support thereof they cite the line of cases holding that the party defrauded will generally lose his right to rescind if, after discovery of the fraud, he takes any benefit under the contract or does any other act which implies an intention to abide by it or an affirmation of it. Such is indeed the rule where rescission is sought solely on the grounds of fraud.

 The trial court's findings and conclusions as to estoppel dealt solely with estoppel to rescind on the ground of fraud. However, as already pointed out, rescission was here sought on the ground of both fraud and failure of consideration. Acceptance of benefits under the contract after discovery of the alleged fraud would indeed estop plaintiffs from asserting that the contract was voidable because of the fraud and thereby cancelling or rescinding the contract. However, we know of no rule of law or equity that would estop a party to a contract from contending that the other party had failed to carry out the contract and therefore seeking rescission thereof, simply because the party seeking such relief had received benefits under the contract or done some act implying an intention to abide by the contract or constituting an affirmation of it, where such party has offered to restore everything of value received by him under the contract. Defendants cite no authority indicating that plaintiffs here would be estopped to seek rescission on the grounds of failure of consideration, and we know of none. To so argue would in effect be to argue that one party to a contract could not complain of the failure of the other party to carry out the contract unless he, too, had refused to carry out the contract, or at least had done nothing indicating an intention on his part to be bound by the contract. Such is so obviously not the law that we deem further discussion thereof unnecessary.

The judgment of the trial court is reversed and the cause remanded with instructions to grant a new trial.

JOHNSON, C. J., and CORN, HALLEY, BLACKBIRD, JACKSON and HUNT, JJ., concur.