In the Matter of the ESTATE OF H. Everett POPE, Jr., Deceased.

**TULSA PROFESSIONAL COLLECTION SERVICES, INC., Appellant,**

v.

**Joanne POPE, Executrix of the Estate of H. Everett Pope, Jr., Appellee.**

No. 72180.

Supreme Court of Oklahoma.

Nov. 27, 1990.

Rehearing Denied March 25, 1991.

Randall E. Rose, Naylor & Williams, Inc., Tulsa, for appellant.

Phillip K. Smith, Smith and Smith, Tulsa, for appellee.

OPALA, Vice Chief Justice.

Two issues are tendered for our decision in this second appeal from denial of a hospital's quest that payment be ordered for the decedent's last illness expenses without a timely statutory creditor's claim:[2] [1] Does Oklahoma law charge the estate representative with knowledge that the hospital where the decedent died as a paying patient was a potential creditor of the estate? and if so [2] Did the hospital effectively relinquish that which was its constitutional due—actual notice under Oklahoma's nonclaim statute? We answer the first question in the affirmative and the second in the negative.

## THE ANATOMY OF LITIGATION

■ The trial court denied the hospital's application for payment of decedent's last illness expenses, which was pressed without an antecedent and timely statutory creditor's claim.[3] We affirmed its order on appeal.[4] The U.S. Supreme Court vacated this court's decision on certiorari and re-

---

**2.** This is, in essence, a proceeding in probate on a rejected creditor's claim against a decedent's estate. It became "wedged or stuck in probate" because, at its inception, the hospital-claimant had argued that the law will dispense with a timely creditor's claim for a decedent's last illness expenses. The state-law norm advocated by the hospital stands rejected by both the trial judge's initial order in this case and this court's earlier opinion in *Matter of the Estate of Pope,* Okl., 733 P.2d 396, 398–399 [1987] [*Tulsa I*].

**3.** The parties stipulated to the following facts in *Tulsa I, supra* note 2 at 397: (1) The decedent was admitted to the hospital on November 23, 1978 and remained there until his death on April 2, 1979; (2) the hospital-stay expenses exceeded $142,000 and decedent's insurer made some payments, leaving a $14,657.55 balance;

the net balance due for decedent's last illness is in dispute; (3) decedent's will was admitted to probate on July 16, 1979; (4) the creditors were notified by publication on July 17 and 24, 1979; (5) no creditor's claim was presented by the hospital to the estate representative within the statutory period; the parties dispute whether a claim was ever presented to the representative, but even if one had been presented, the claim was not approved; no suit to compel the representative's approval of the claim has been filed; (6) the assignee-creditor's October 17, 1983 application for an order compelling payment of the expenses of the decedent's last illness was set for hearing, the stipulated facts received, and briefs ordered to be submitted; the matter was then taken under advisement.

**4.** *Tulsa I, supra* note 2.

manded the cause [5] for a factual inquiry into the publication service's sufficiency as notice to the hospital—conformable to the minimum standards of due process—of the time after which the hospital's claim against the estate would be barred. We ordered the district court to carry out the federal court's mandate,[6] and that court denied the relief sought, implicitly holding service by publication was constitutionally sufficient, and the hospital's quest for payment untimely. The hospital once again appeals.

## I THE MINIMUM STANDARDS OF NOTICE UNDER THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT

■ No state may deprive a person of property without due process, commands the Fourteenth Amendment.[7] Since the landmark case of *Mullane v. Central Han-*

*over Bank & Trust Co.,*[8] the U.S. Supreme Court has required that notice meeting minimum constitutional standards precede judicial action which affects a protected property interest. Notice must be reasonably calculated to inform interested parties of the pending action and of every critical stage so as to afford them an opportunity to defend [9] or to meet the issues at a meaningful time and in a meaningful manner.[10]

Under *Mullane* and its progeny, one who seeks to alter another's legal rights must give actual notice to the latter before a court can act upon the claim. In *Mullane's* aftermath the Court held that publication notice is insufficient to inform a known creditor that the latter's claim would be barred in bankruptcy unless filed within a statutory period.[11] The Court next elaborated on its *Mullane* mandate in *Walker v. City of Hutchinson,*[12] where it held that

5. *Pope, supra* note 1, 485 U.S. at 490–92, 108 S.Ct. at 1348.

6. Neither the probate judge nor this court in *Tulsa I, supra* note 2, had been called upon to deal with the quality of notice as a factual inquiry. No state-court finding had been extant when the U.S. Supreme Court reached the issue. An appellate forum cannot exercise first-instance jurisdiction by making initial resolutions of disputed facts. When necessary findings are absent from an appellate record, the case must be remanded to the trial court with directions to settle the issues in controversy. *Davis v. Gwaltney,* Okl., 291 P.2d 820, 824 [1955]; *Matter of Estate of Bartlett, infra* note 34 at 377; *American Ins. Ass'n v. Indus. Com'n,* Okl., 745 P.2d 737, 740 [1987]; *Robert L. Wheeler, Inc. v. Scott,* Okl., 777 P.2d 394, 399 [1989].

7. 14th Amend., § 1, U.S. Const.

8. 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 [1950]. In *Mullane* the Court struck down a provision of a common trust fund statute which sanctioned publication notice as the sole means of informing known trust beneficiaries of an action that would settle their rights against the plaintiff-trustee. The Court held the statutory publication notice to be inadequate because "it is not reasonably calculated to reach those who could easily be informed by other means at hand." It held that due process requires effective notice based upon practicality and reasonableness, but it does not set forth a formula for determining when a statute is violated. *Mullane* launched a reassessment of statutory notice provisions in many classes of litigation—bankruptcy proceedings, condemnation proceedings, forcible entry

and detainer suits and tax sales. See *infra* notes 11–18.

9. *Mullane, supra* note 8, 339 U.S. at 314, 70 S.Ct. at 657.

10. *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 [1965]; *Peralta v. Heights Medical Center, Inc.,* 485 U.S. 80, 108 S.Ct. 896, 899, 99 L.Ed.2d 75 [1988]. See also, *Capitol Federal Savings Bank v. Bewley,* Okl., 795 P.2d 1051, 1054 [1990].

11. *New York v. New York, N.H. & H.R.R.,* 344 U.S. 293, 294, 73 S.Ct. 299, 301, 97 L.Ed. 333 [1953]. In *New York* the Court struck down a bankruptcy statute which barred *potential creditors' claims* not filed within a prescribed period of time following publication notice. Although aware of the reorganization proceedings, the creditor did not know that its lien against the railroad property was in jeopardy. The finality of decision that flows from disposition of a creditor's claim led the Court to require that actual notice be given known creditors in a bankruptcy proceeding. *Much like the claimant against a decedent's estate, the creditor in a bankruptcy proceeding is one whose claim would be extinguished if not pressed within the statutory period.*

12. 352 U.S. 112, 115, 77 S.Ct. 200, 202, 1 L.Ed.2d 178 [1956]. In *Walker* the Court again rejected constructive notice in proceedings involving property interests protected by the 14th Amendment. Because the publication notice given the landowner failed to satisfy due process, the Court invalidated the outcome of a Kansas condemnation proceeding.

actual notice must be given in state proceedings which "directly and adversely affect" a protected property interest. Notice of condemnation proceedings published in a local newspaper was pronounced insufficient vis-a-vis the landowner whose name and address the city knew, or should have learned, from the official county records. The Court further amplified this message in *Schroeder v. City of New York.*[13] There it concluded that posted and published notice of condemnation proceedings is inadequate to afford the landowners an opportunity to defend against the loss of their rights in land. Actual notice, the Court opined, is due all "known or very easily ascertainable" parties. In *Greene v. Lindsey*[14] the Court condemned the posting of a summons on a tenant's apartment door as

constitutionally substandard notice of forcible entry and detainer—when an "inexpensive and efficient mechanism such as mail service is available." In *Mennonite Board of Missions v. Adams*[15] the Court continued refining *Mullane.* There, mortgagees received notice of a tax sale by publication alone. The Court held that "a *mortgagee's knowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending.*"[16] (Emphasis added.) The state's failure to provide the mortgagee with actual notice of the tax sale violates due process, because "reasonably diligent efforts" could have identified the mortgagee and ascertained its address.[17]

The Court's teaching in *Pope*[18] directly applies Mullane to probate proceedings.[19]

13. 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 [1962]. Decedent's creditors are positioned similarly to landowners in *Schroeder, supra,* and *New York, supra* note 11. They are all potential claimants in a probate proceeding. In *Schroeder* the City of New York acquired by condemnation the right to divert a waterway. A state statute provided that all claims against the city based on the city's diversion of water would be barred unless an injured party *took affirmative steps to claim damages within three years.* Initiation of condemnation proceedings set in motion a clock that would terminate the claimant's property interest if he failed timely to assert that interest. The Court's teaching gives potential claimants a right to better-than-publication notice.

14. 456 U.S. 444, 455, 102 S.Ct. 1874, 1881, 72 L.Ed.2d 249, 258–259 [1982].

15. 462 U.S. 791, 103 S.Ct. 2706, 2711–2712, 77 L.Ed.2d 180 [1983]. In *Mennonite* the Court applied *Mullane* to notice requirements in a tax sale proceeding. Although not immediately extinguishing the plaintiff's claim, the tax sale diminished the value of the owner's protected property interest. *Mennonite* reinforced *Mullane* by announcing that notice *by mail or other means equally effective is the minimum constitutional requirement.* More than publication notice is required when the proceeding adversely affects the property interests of reasonably ascertainable parties. The Court rejected the notion that the taxpayer and mortgage company had notice by operation of law because taxes are assessed annually and payment of those taxes can be easily ascertained from checking tax records; hence personal notice was not required.

16. *Mennonite, supra* note 15, 462 U.S. at 800, 103 S.Ct. at 2712. Similarly, here the hospital's

knowledge that the patient was dead did not equate with notice that probate had been instituted and a *definite two-month period* for filing claims had been set in motion.

17. *Mennonite, supra* note 15, 462 U.S. at 798, 103 S.Ct. at 2711.

18. *Pope, supra* note 1. Concluding that due process requires notice "'by mail or other means as certain to ensure actual notice'" (*Pope, supra* note 1, 485 U.S. at 490–92, 108 S.Ct. at 1348, quoting *Mennonite, supra* note 15, 462 U.S. at 800, 103 S.Ct. at 2712), the Court reasoned that a creditor's claim is considered a property interest protectible by the Due Process Clause, and that the probate court's intimate involvement throughout the probate proceedings is so pervasive that it must be considered state action. *After weighing the creditor's interest in recovery against the state's interest in the speedy settlement of estates, the Court held that known or reasonably ascertainable creditors, whose claims are not merely "conjectural," are entitled to actual notice of the time for filing a claim with the estate's representative.*

19. The earliest indication that the *Mullane* standard of actual notice would be applied to a decedent's creditor whose identity is either known or ascertainable came in 1983. One week after deciding *Mennonite,* the Court by its memorandum disposition in *Continental Ins. Co. v. Moseley,* 463 U.S. 1202, 103 S.Ct. 3530, 77 L.Ed.2d 1383 [1983], vacated the Nevada Supreme Court's opinion (*Moseley I,* 98 Nev. 476, 653 P.2d 158 [1982]), in which *Mullane* was held not to apply in favor of a known creditor. The Court remanded the case and directed the Nevada court's conclusions be reconsidered in light of *Mennonite.* On remand (*Moseley II,* 100

Its pronouncement places on the estate representative an affirmative duty to make "reasonably diligent efforts" to uncover the identity of estate creditors and to ascertain their whereabouts for actual notice which would inform them of the time to file claims against the estate.[20]

## MULLANE'S IMPACT ON OKLAHOMA'S NOTICE SCHEME

Some thirty years after *Mullane*, Oklahoma litigants were still required to protect their interest by monitoring court dockets during critical litigation stages. If an appealable decision was rendered *in absentia* and without notice to the defeated litigant, the unsuccessful party was nonetheless bound by its terms if he failed to learn of them in time to bring an appeal within the statutorily prescribed time. Implementing the standards and spirit of *Mullane* as well as of its progeny, this court expressly condemned in *McCullough v. Safeway*[21] "as clearly in discord with the notions of due process, state and federal" the then obtaining notion of duty to monitor the court's

docket for appealable events that might occur *in absentia* when the case was under advisement and not regularly set on the docket for pronouncement of the court's decision.

Under an earlier version of railroad[22] and highway condemnation statutes,[23] the time for filing an exception or demand for trial by jury ran 60 days from the date the clerk would *file* the commissioner's report of valuation. In those cases the landowner similarly had the duty to monitor the docket for the appearance of the critical report and then count 60 days for computing the terminal day. The due process notions counseled by the dissenting opinion in *State ex rel. Department of Highways v. Brown*[24] finally led to legislative amendments of the pertinent condemnation statutes. The enactments now provide that in eminent domain cases actual notice of the filing of the commissioner's report must be given. The legislature itself relieved the condemnee-landowner of the once-borne duty to monitor a court docket. It *placed the onus of notice giving* on the party who

Nev. 337, 683 P.2d 20 [1984] ) the Nevada Court applied *Mullane* and *Mennonite*, holding that a known estate creditor's claim could not be barred by a nonclaim statute unless that creditor had been afforded "more than service by publication".

**20.** Several law review articles discuss *Pope's* impact on probate procedure; see Fleig, Notice to Creditors in Probate Proceedings, 59 OBJ 3651 [December 31, 1988]; Chapman, Probate Nonclaim Statutes and the *Tulsa* Decision: Requiring Actual Notice to Reasonably Ascertainable Creditors, 18 Stetson L.Rev. 471 [1989]; Ireland, Note, 58 Miss.L.J. 193 [1988]; Losacco, Probate: Notice to Estate Creditors: the Effect of *Tulsa Professional Collection Services v. Pope*, 42 Okl. L.Rev. 325 [1989]; Heritage, Notice to Estate Creditors, 11 UALR L.J. 603 [1988–89]; Davis, Recent Developments, 56 Tenn.L.Rev. 465 [1989]; Wilson, New Requirements of Creditor Notice in Probate Proceedings, 54 Mo.L.Rev. 189 [1989].

**21.** Okl., 626 P.2d 1332, 1334 [1981]. The concept announced in *McCullough* is also embodied in Rule 27, Rules for the District Courts of Oklahoma, 12 O.S.Supp.1985, Ch. 2, App. The rule requires the trial judge "to see that copies of the minute of order or judgment setting out such decision are delivered or mailed by the

court clerk to counsel in the case and to any party appearing pro se. The time to appeal from a decision rendered *in absentia* runs from the day its copy is mailed or personally delivered to the parties."

**22.** See 66 O.S.1961 § 55.

**23.** See 69 O.S.Supp.1970 § 1203.

**24.** Okl., 462 P.2d 261, 266 [1969] (McInerney, J., dissenting). *Brown* was consistent with the statutory scheme then in effect. The court held that lack of notice does not violate due process and the duty to monitor the court docket rests on the condemnee-landowner. The dissenting opinion notes that the statutory scheme then in force did not give the landowner notice. The filing of the commissioner's report was but the first step in a multi-stage proceeding—the object of which was to invest the condemnor-State with title to the affected land. The State notice to the landowner did not contain the information commanded by *Mullane*,—i.e., that the party served be informed of the relief demanded from him and be apprised of the result should he default. Unless notice reasonably conveys "the required information" and is plainly understood, the process is a "mere gesture" and not one's due under the constitution. *Mullane, supra* note 8, 339 U.S. at 314–315, 70 S.Ct. at 657.

seeks adversely to affect the condemnee's title to property.[25]

Our pre-*Pope* practice similarly required a decedent's creditor to monitor the court's docket for the earliest paper trail of instituted probate proceedings. Absent from our statutory and case law was the very notion that the estate representative must use diligence to ascertain the potential creditors' identity as well as their whereabouts for compliance with the minimum standards of due process. Post–*Pope* legislation has now cast on the estate representative an affirmative duty to protect "reasonably ascertainable creditors" by giving them actual notice of the time after which claims against the estate would be barred.[26]

## II STATE–LAW STANDARDS FOR ASSESSING THE QUANTUM OF DILIGENCE THE ESTATE REPRESENTATIVE MUST USE TO IDENTIFY POTENTIAL CREDITORS

■ On the scanty record before it, the U.S. Supreme Court declined in *Pope* to determine initially whether the estate representative was *less than diligent* in failing to identify the hospital as a potential creditor. The cause was remanded for a factual probe.[27] *Pope* neither guided nor attempted to preempt state law by imposing articulated federal norms for measuring the quantum of diligence required of an estate representative to identify persons or entities with likely creditor status vis-a-vis a decedent's estate so that these persons may be afforded the quality of notice that is their constitutional due.[28] Once a person has been so identified, *federal law* determines the process of diligence in ascertaining the affected entity's last whereabouts for notice of the pendency of proceedings to be given at a meaningful time and in a meaningful manner.[29] We hence fashion today state-law standards to govern the degree of diligence an estate representative must use when making "reasonably diligent efforts . . . to uncover the identities of [potential] creditors."[30]

The estate representative must use due

---

**25.** See 66 OS.1981 § 55 and 69 O.S.1981 § 1203(e)(2).

**26.** Before *Pope* Oklahoma's nonclaim statute provided that a representative of the decedent's estate notify creditors solely by publication. 58 O.S.1971 §§ 331, 333. Creditors' claims against the estate could be brought within two months after that notice. § 331. Claims pressed after the statutory two-month limit were treated as barred. *Tulsa I, supra* note 2 at 401.

Following *Pope,* the Oklahoma legislature amended the nonclaim statute to cure its constitutional defect. See 58 O.S.Supp.1988 §§ 331.1, 331.2, 332 and 333. Now, the estate's representative must give actual notice by mail or by personal delivery to "known creditors" and "reasonably ascertainable creditors." 58 O.S.Supp. 1988 §§ 331.1 and 331.2. "Reasonably ascertainable creditors" are those whose identities, last-known addresses and claims can be determined by the personal representative's reasonably diligent efforts. 58 O.S.Supp.1988 § 331.1. See also discussion in *Losacco, supra* note 20. These amendments, all consistent with today's pronouncement do not govern the case at bar; they affect only those probate proceedings which were commenced *on or after November 1, 1988.* 58 O.S.Supp.1988 §§ 331.1 *et seq.*

**27.** For an indepth explanation, see discussion in *supra* note 6.

**28.** Some commentators note that the Court in *Pope* failed to define the precise degree of diligence expected of an estate representative to identify potential creditors of the decedent. They believe the Court may have intended state courts and legislatures to resolve that issue. Davis, *supra* note 20 at 481; Heritage, *supra* note 20 at 613.

**29.** *Mennonite, supra* note 15; *Schroeder, supra* note 13; *Greene, supra* note 14; *Armstrong, supra* note 10.
This duty is also articulated in our own jurisprudence (*Bomford v. Socony Mobil Oil Co.,* Okl., 440 P.2d 713, 715 [1968]; *Cravens v. Corporation Commission,* Okl., 613 P.2d 442 [1980]; *Harry R. Carlile Trust v. Cotton Petroleum Corp.,* Okl., 732 P.2d 438, 443, n. 25 [1987]; *Cate v. Archon Oil Co., Inc.,* Okl., 695 P.2d 1352, 1356 [1985] ), as well as in Rule 16, Rules for the District Courts, 12 O.S.1981, Ch. 2. App., which provides procedure to be followed before a judgment may be rendered against a defendant served solely by publication. See *Carlile, supra* at 443, n. 26.

**30.** *Pope, supra* note 1, 485 U.S. at 487, 108 S.Ct. at 1347 and 1348, quoting *Mennonite, supra* note 15, 462 U.S. at 798, n. 4, 103 S.Ct. at 2711, n. 4.

diligence [31] to identify the decedent's potential creditors from all available sources at hand. We need not concretize these norms by resort to extra-statutory sources. The law's expected degree of diligence is that defined in 25 O.S.1981 §§ 10–13.[32]

Under state-law standards an estate representative who knows of a decedent's last-illness hospital stay as a paying patient is put on notice by the provisions of 25 O.S. 1981 §§ 11–13 that the health care provider is likely to stand, vis-a-vis the decedent's estate, in the status of a creditor. It is then the estate representative's state-law duty to give actual notice to all such creditor entities whose whereabouts are reasonably ascertainable. Upon discharging this obligation, the estate representative bears no further responsibility to inquire into the exact amount of the claim, if any there be; that burden shifts to the potential creditor who must file and prove a claim for a stated sum. By giving actual notice to every ascertainable creditor-claimant, the representative not only satisfies state-law duty but also meets the minimum standards of due process mandated by *Mennonite, Schroeder, Greene, Manzo* and *Peralta.*[33]

## III STANDARD OF REVIEW

■ Probate proceedings are of equitable cognizance.[34] While an appellate court will examine and weigh the proof in the record, it must abide by the law's presumption that the decision is legally correct[35] and cannot be disturbed unless found to be clearly contrary to the weight of the evidence or to some governing principle of law.[36] If legally correct, the ruling may not be reversed because of the lower court's faulty reasoning, erroneous finding of fact or its consideration of an immaterial issue.

## IV BASED ON OKLAHOMA STATE-LAW STANDARDS OF DILIGENCE, THE ESTATE REPRESENTATIVE, WHEN GIVING PUBLICATION NOTICE ALONE, COULD HAVE ASCERTAINED FROM PERSONAL KNOWLEDGE AND FROM AVAILABLE SOURCES AT HAND THAT THE HOSPITAL WAS A LIKELY DECEDENT'S CREDITOR

■ On this record the executrix was clearly aware that during her husband's last illness he had been a paying patient in the hospital for over four months prior to his death. She also knew that the decedent had medical insurance and that the hospital had been processing the decedent's bills through his risk carrier.

**31.** Oklahoma jurisprudence has dealt with "due diligence" in the context of ascertaining the defendants' whereabouts for actual notice to be given in addition to publication service. See *Bomford v. Socony Mobil Oil Co., supra* note 30, syllabus 4; *Ross v. Thompson,* 174 Okl. 183, 50 P.2d 385, syllabus 3 [1935]; *Richardson v. Howard,* 51 Okl. 240, 151 P. 887, 888 [1915]. Due diligence was dealt with in *Mullane, supra* note 8, 339 U.S. at 317, 70 S.Ct. at 659, where the Court states that publication notice is adequate for "[t]hose beneficiaries ... whose interests or whereabouts could not with due diligence be ascertained." The precise issue here—what constitutes the quantum of due diligence *for ascertaining the identity of potential creditors* of decedent persons—is one of first impression in our jurisprudence.

**32.** "Notice is either actual or constructive." 25 O.S.1981 § 10. "Actual notice consists in express information of a fact." 25 O.S.1981 § 11. "Constructive notice is notice imputed by the law to a person not having actual notice." 25 O.S.1981 § 12. "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself." 25 O.S.1981 § 13.

**33.** See *Mennonite* at *supra* note 15, *Schroeder* at *supra* note 13, *Greene* at *supra* note 14, *Manzo* and *Peralta* at *supra* note 10.

**34.** *Matter of Estate of Bartlett,* Okl., 680 P.2d 369, 374 [1984].

**35.** *Carpenter v. Carpenter,* Okl., 645 P.2d 476, 480 [1982].

**36.** *Matter of Estate of Bartlett, supra* note 34 at 374; *Burdick v. Independent School Dist.,* Okl., 702 P.2d 48, 55 [1985]; *Carpenter v. Carpenter, supra* note 35 at 480; *Snow v. Winn,* Okl., 607 P.2d 678, 681 [1980]; *Wahby v. Renegar,* 199 Okl. 191, 185 P.2d 184, 185 [1947]; *Harrison v. Eaves,* 191 Okl. 453, 130 P.2d 841, 844 [1942].

As Oklahoma statutes [37] clearly require, we must infer from these facts within her knowledge that the estate representative could have ascertained from her personal knowledge and on further inquiry from available sources at hand that, when she caused publication notice to be given, the hospital was likely to become a creditor-claimant against the decedent's estate. That knowledge alone was enough to entitle the hospital to actual notice of the terminal date after which claims against the estate would be barred. Once an individual has been ascertained as a likely creditor, it is irrelevant—for notice-giving purposes—that the exact amount of the claim, if there indeed was one, cannot be computed and hence remains uncertain. The dollar figure becomes an issue only *after* the creditor has pressed a claim against the estate.[38]

In short, the executrix failed in her duty to treat the hospital—a known health care provider during the decedent's last illness—as a likely or ascertainable creditor and to give it actual notice of the statutory period for submission of claims. The hospital was hence deprived of a constitutionally protectible opportunity to press its demands by proving a claim.

**37.** See *supra* note 32 for the pertinent provisions of 25 O.S.1981 §§ 10–13.

**38.** One against whom judgment has been rendered on a constitutionally *defective* notice may secure its vacation *without* having to show a defense to the claim over which the court *wrongly* assumed cognizance. *Peralta, supra* note 10. Similarly here, relief from the effect of the published notice to creditors that was constitutionally *flawed* could not be withheld from the hospital by showing that during the period for filing claims *under that defective notice* the hospital might not have been able to come up with *an exact amount* due it *after* receiving payment of the portion covered by the decedent's insurance. A judicial act that rests on notice that is inadequate for the protection that is one's due at a meaningful time and in a meaningful manner cannot be infused with constitutional vitality from facts that might or could have been elicited had adequate notice been given in a timely manner and a contest actually taken place. See *Manzo* and *Peralta, supra* note 10.

**39.** *Guinn v. Church of Christ of Collinsville*, Okl., 775 P.2d 766, 777 [1989]; *Faulkenberry v. Kan-*

## V THE HOSPITAL'S ACTS OR CONDUCT DID NOT WAIVE ITS CONSTITUTIONAL RIGHT TO NOTICE

■ Unless the hospital waived its status as a creditor of the decedent's estate, thus relinquishing its constitutional right to actual notice, the executrix' constitutionally infirm notice (by publication alone) violates the minimum standards of due process. A waiver is the voluntary or intentional relinquishment of a known right.[39]

The hospital attained the status of decedent's creditor when he was admitted for services as a paying patient. When probate proceedings were filed, the hospital became a likely claimant against the decedent's estate. At the critical time when notice to creditors was given solely by publication, the executrix stood charged with knowing facts from which she could infer the hospital's status as a likely or ascertainable creditor-claimant.

The executrix seems to have urged below that the hospital's failure to communicate with her about the status of its bill during and after the decedent's stay in that facility operates to relieve her of the duty to give notice. She did not recall ever receiv-

sas City Southern Ry. Co., Okl., 602 P.2d 203, 206–207 [1979]; *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 [1938]. "Waiver" originated in civil law. Justice Black engrafted it upon criminal law in *Johnson*. In *Cordova v. Hood*, 84 U.S. [17 Wall. 1] 1, 21 L.Ed. 587 [1872], the Court said that "waiver" is a matter of intention as well as action. The party invoking waiver as a bar is required to show that the person against whom the bar is asserted did, at the time of the transaction, have knowledge, actual or constructive, of the existence of his rights and of all the material facts upon which they depended. *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 143, 87 S.Ct. 1975, 1985, 18 L.Ed.2d 1094 [1967]. No one can be bound by a waiver of one's rights unless it was made with full knowledge of the rights intended to be waived. The fact that one knows his rights and intends to waive them must plainly appear. *Universal Gas Co. v. Central Illinois Public Service Co.*, 102 F.2d 164, 168 [7th Cir.1939]. Cf. *Schneckloth v. Bustamonte*, 412 U.S. 218, 243–244, 93 S.Ct. 2041, 2056, 36 L.Ed.2d 854 [1973]. An indispensable ingredient of one's effective waiver is a freely exercised will to relinquish a known right.

ing a hospital bill. She seems to urge that even if she had inquired about the bill that was due, the hospital could not have told her then if a demand would be forthcoming since a claim against the decedent's insurance was still being pressed.

The record does not support a conclusion that the hospital, by its acts or conduct, *voluntarily* or *intentionally waived its status as creditor or its due process right to notice*. Nothing in the hospital's acts demonstrates relinquishment of its constitutionally mandated right to actual notice of the time to file a claim. Neither does the hospital's assignment of its claim to another, more than two years after publication notice, bears indicia of a fundamental right's relinquishment. Rather, the subsequent assignment eloquently demonstrates that the hospital believed its claim for decedent's last illness expenses was still viable. We hence conclude the hospital did not effectively waive its status as creditor of the decedent's estate when notice to creditors was published. Because *no actual notice was given,* the hospital failed to receive the process that was its constitutional due.[40]

## SUMMARY

The trial court's probate order under review *is clearly contrary to the weight of the evidence and to the governing principles of the applicable state and federal law.* It is accordingly reversed; the cause is remanded with directions to find that the hospital's claim for the decedent's expenses of stay and treatment during his last illness cannot be rejected as untimely pressed because the hospital failed to receive *actual notice* of the time to file a claim—its *sine qua non* constitutional due under the circumstances shown by the record. On remand the trial court shall direct that the estate representative consider the claim as timely and act upon it in compliance with the applicable procedure of the Probate Code.

THE TRIAL COURT'S ORDER IN PROBATE IS REVERSED AND CAUSE REMANDED FOR FURTHER PROCEEDINGS WITH DIRECTIONS.

HARGRAVE, C.J., and HODGES, SIMMS, DOOLIN and KAUGER, JJ., concur.

ALMA WILSON, J., concurs specially.

LAVENDER and SUMMERS, JJ., concur in judgment.

KAUGER, Justice, concurring:

I dissented in part to the majority opinion in *In the Matter of the Estate of Pope,* 733 P.2d 396, 401 (Okla.1986), *rev'd,* 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988) because of the principle expressed in *Cate v. Archon Oil Co., Inc.,* 695 P.2d 1352, 1356 (Okla.1985). I join the majority here for the same reasons.

ALMA WILSON, Justice, concurring specially:

I concur specially to emphasize the significance of Part IV. Under Part IV, a personal representative in probate has a duty to mail "notice to creditors" to the hospital whenever the deceased received hospital care related to the last illness. Part IV recognizes no exception to this duty. Notice must be mailed to the hospital, even though the hospital advises that the charges will be paid by the insurer or the hospital is advised of the pending probate. Mailing of the "notice to creditors" to all identifiable health care providers for the last illness of the deceased, without regard to insurance coverage, will place the burden upon the health care provider to timely preserve its claim, whether liquidated or unliquidated. Close attention to this duty by the bar will eliminate intolerable lapses of time from the notice to the filing of claims by health care providers caused by delays in processing insurance claims. With notice mailed, the hospital will not be in a position to seek payment

---

**40.** Whether an estate's fiduciary may be answerable to the estate's distributees for a belatedly asserted claim that was delayed by the fiduciary's failure to give actual notice to a known creditor is neither urged nor reached by today's opinion. See in this connection the discussion in *Davis, supra* note 20 at 480.

through the probate court more than four years after publication of the notice to creditors, as in the instant case. With notice mailed, operation of the non-claim statute, 58 O.S.Supp.1990, § 331.2, will bar both the filing and the arising of the claim of the health care provider or its assignee.